UNITED STATES BANKRUPTCY COURT
IN THE WESTERN DISTRICT OF MICHIGAN

IN THE MATTER OF:

SPIECH FARMS, LLC,

Case No.: 17-05398
Chapter 11 - Filed: 11/22/2017

Debtor.

_____/ /

### DEBTOR'S EMERGENCY MOTION FOR
### (i) ENTRY OF AN INTERIM AND FINAL ORDER
### (a) AUTHORIZING IT TO USE CASH COLLATERAL; AND
### (b) PROVIDING ADEQUATE PROTECTION AND OTHER RELIEF

**NOW COMES** Spiech Farms, LLC ("Debtor"), by and through its attorneys, Rayman & Knight, and for its Emergency Motion for: (i) Entry of an Interim and Final Order (a) Authorizing It to Use Cash Collateral; and (b) Providing Adequate Protection and Other Relief ("Motion"), states as follows:

### INTRODUCTION

1. On November 22, 2017 ("Petition Date") the Debtor filed for protection under Chapter 11 of the United States Bankruptcy Code ("Code"). The Debtor filed this Motion as soon as practical after the Petition Date. The Debtor is in immediate need for an Order authorizing the use of cash collateral in order to meet payroll, sustain its operation and preserve its assets for the benefit of its creditors[1].

2. Since the Petition Date, the Debtor has operated its business as Debtor-in-Possession pursuant to §§ 1107 & 1108 of the Code.

3. No official committee of creditors holding unsecured claims has been appointed and no Trustee or Examiner has been appointed in this case.

---

[1] A Declaration in support of this Motion is attached as Exhibit "A" which includes the budget described herein and provides additional information with respect to the Debtor's assets.

Page **1** of **11**

4. The Debtor filed this Motion pursuant to Fed. R. Bankr. P. 4001 and L.B.R. 4001-3 (W.D.M.).

5. This Court has jurisdiction over this matter relating to this Motion pursuant to 28 U.S.C. §1334(a). This is a core matter pursuant to 28 U.S.C. §157(b)(2)(M). The statutory predicates for the relief sought herein are Sections 105, 361, and 363 of the Bankruptcy Code and Bankruptcy Rules 4001(a), (b) and (d) and LBR 4001-3. Venue of the Chapter 11 case in the Court is proper pursuant to 28 U.S.C. §§ 1408 & 1409.

6. The Debtor is a major provider of fresh and frozen blueberries and fresh asparagus and grapes.

7. The Debtor had gross sales for 2016 in the approximate amount of $15,800,000.00 and $11,800,000.00 in 2017. The 2017 blueberry crop in Georgia (where the Debtor's wholly owned subsidiary operates) had a nearly complete crop loss due to a late March frost. In fact, it lost an estimated one-million pounds of blueberries, which had a gross value of $2,500,000.00. In addition, a heavy freeze in May in Michigan caused a loss of 60% of the grape crop, resulting in a loss of gross revenue of $550,000.00.

8. The Debtor packages and sells fruit to grocers nationwide, including Meijer, Wal-Mart, Jewel Osco, Kroger, Topco, Publix, Spartan Stores and Whole Foods. It produces over 80% of the fresh market concord grapes for the United States market and the largest grape producer of fresh table grapes east of the Mississippi.

9. It employs between 100 and 150 employees and has had a year-to-date payroll of approximately $3,250,000.00.

## SUMMARY OF THE RELIEF REQUESTED

10. Through this Motion, the Debtor seeks entry of an interim and final Order, in the

4. The Debtor filed this Motion pursuant to Fed. R. Bankr. P. 4001 and L.B.R. 4001-3 (W.D.M.).

5. This Court has jurisdiction over this matter relating to this Motion pursuant to 28 U.S.C. §1334(a). This is a core matter pursuant to 28 U.S.C. §157(b)(2)(M). The statutory predicates for the relief sought herein are Sections 105, 361, and 363 of the Bankruptcy Code and Bankruptcy Rules 4001(a), (b) and (d) and LBR 4001-3. Venue of the Chapter 11 case in the Court is proper pursuant to 28 U.S.C. §§ 1408 & 1409.

6. The Debtor is a major provider of fresh and frozen blueberries and fresh asparagus and grapes.

7. The Debtor had gross sales for 2016 in the approximate amount of $15,800,000.00 and $11,800,000.00 in 2017. The 2017 blueberry crop in Georgia (where the Debtor's wholly owned subsidiary operates) had a nearly complete crop loss due to a late March frost. In fact, it lost an estimated one-million pounds of blueberries, which had a gross value of $2,500,000.00. In addition, a heavy freeze in May in Michigan caused a loss of 60% of the grape crop, resulting in a loss of gross revenue of $550,000.00.

8. The Debtor packages and sells fruit to grocers nationwide, including Meijer, Wal-Mart, Jewel Osco, Kroger, Topco, Publix, Spartan Stores and Whole Foods. It produces over 80% of the fresh market concord grapes for the United States market and the largest grape producer of fresh table grapes east of the Mississippi.

9. It employs between 100 and 150 employees and has had a year-to-date payroll of approximately $3,250,000.00.

## SUMMARY OF THE RELIEF REQUESTED

10. Through this Motion, the Debtor seeks entry of an interim and final Order, in the

form attached as Exhibit "B", or in such alternative terms as the Court finds just and equitable: (i) granting and affirming adequate protection to secured creditors; (ii) authorizing use of cash collateral on an interim basis; and (iii) scheduling a final hearing. Upon information and belief, the only secured creditor with a lien in cash collateral is Chemical Bank ("Chemical").

11. As adequate protection for the security interests held by Chemical and other secured creditors, the Debtor offers replacement lien(s) in all types and descriptions of collateral which are held by said creditors, acquired or arising after the Petition Date, to the extent provided in 11 U.S.C. §361(2) in the same rank, validity and priority as existed pre-petition, as more fully described in ¶34, and such additional adequate protection as more fully described in this Motion and in the proposed Order.

12. The Debtor seeks an entry of an interim and final Order authorizing use of cash collateral to preserve its operations and estate for the benefit of creditors. In compliance with Rule 4001(d), the Debtor states:

- Upon information, the only entities which claim an interest in cash collateral are the secured creditors listed in paragraph 15 of this Motion and *ad valorem* taxes;

- Pursuant to the proposed Order and as further set forth in paragraph ¶34, the Debtor proposes: (i) to make adequate protection payments to the secured creditors through the operation of its business; and (ii) to grant the secured creditors continuing security interests, consistent with the proposed Order, to protect said creditor from a decrease in value in their respective collateral from the Petition Date pursuant to 11 U.S.C. §361(2).

## SUMMARY OF SECURED CLAIMS

13. Chemical, through six separate obligations, is owed approximately $4,950,000.00 ("Indebtedness"). Chemical would claim that the Indebtedness is secured by all of the assets of the Debtor. In addition, each of the loans have the following co-obligors: Timothy M. Spiech,

Robin L. Spiech, and Steven M. Spiech.

14. The various loans owed to Chemical are outlined below:

| Loan No. | Loan Description | Loan Date | Balance |
|---|---|---|---|
| 1735 | Line of Credit | 10-26-2016 | $1,300,000.00 |
| 1677 | Line of Credit | 9-20-2013 | $1,302,000.00 |
| 1792 | Real Estate | 9-20-2013 | $1,044,888.00 |
| 1776 | Real Estate | 9-20-2013 | $522,434.00 |
| 2531 | Equipment | 4-22-2015 | $648,256.00 |
| 1750 | Equipment | 9-20-2013 | $136,545.00 |
| | | Total | $4,954,123.00 |

15. The Loan ending in 1677 is guaranteed by the Farm Service Agency.

16. Robin L. Spiech and her husband, Steven M. Spiech, granted Chemical mortgages on their real estate which was recently appraised by Chemical with a value of $4,725,000.00 to secure the above obligations ("Mortgaged Property").

17. In addition to the Debtor's assets and the Mortgaged Property, Chemical has an assignment of the Debtor's ownership interest in Spiech Georgia, LLC which also has significant equity.

18. In addition, Chemical has been pledged a life insurance policy of Steven M. Spiech in the amount of $2,000,000.00.

19. In addition to Chemical, the following creditors may claim an interest in cash collateral: Leaf Capital Funding, LLC ("Leaf"), CHS Capital, LLC ("CHS"), Produce Pay, Inc.

("Produce Pay"), and Monte Packaging, Inc. ("Monte") ("Secured Creditors")[2].

20. Leaf is believed to have provided financing for specific equipment through three separate agreements. The balance owed on these agreements are approximately $25,000.00, $48,000.00 and $70,000.00 for a total of $153,000.00. It has filed a UCC financing statement claiming a security interest in all assets. Its lien position is disputed by the Debtor as the agreements seem to grant a security interest in specific property only.

21. CHS is owed the sum of $173,00.00 for unpaid fertilizer. It claims a lien in all assets.

22. Produce Pay claims to be an owner of inventory of the Debtor and to be owed the sum of $460,927.98. The Debtor has always maintained possession of the inventory. Produce Pay has also filed a UCC financing statement claiming a security interest in all assets. Its lien position is disputed by the Debtor and it is believed it will be disputed by Chemical.

23. Monte is a provider of packaging material for the Debtor. It is owed the approximate amount of $225,000.00. It claims a lien, according to its UCC financing statement, in "all corrugation, packing." Its lien position is disputed by the Debtor[3].

24. Although not technically secured claims, the following parties may make Perishable Agricultural Commodities Act ("PACA") claims to the Debtor's accounts receivable, inventory and other assets:

| Creditor | Product | Amount |
| --- | --- | --- |
| Gijsbert Vanden Bogerd | Grapes | $17,290.50 |

---

[2] As set forth below, it is the Debtor's position that Leaf, Produce Pay and Monte do not have an interest in Cash Collateral. CHS may have a lien in cash collateral assets, but it is junior to that of Chemical.

[3] The promissory note giving rise to the security interest has been paid in full and pursuant to the parties' agreement the security interest has been terminated.

| Douglas West | Grapes | $14,526.54 |
| --- | --- | --- |
| Schultz Fruitridge Farms, Inc. | Grapes | $66,630.50 |
| International Fruit Company | Blueberries | $38,500.00 |
| | Total: | $119,657.04 |

## SUMMARY OF THE DEBTOR'S ASSETS

25. The following is a summary of the Debtor's significant personal property assets that are the subject of this Motion. The values listed below are estimates provided by management, based upon its knowledge of its assets and its experience in the industry as of November 22, 2017:

- Checking Accounts (at PNC Bank)     $ 766,787.69
- Accounts Receivable[4]     $ 618,688.74
- Fresh & Frozen Inventory     $ 861,993.00
- Machinery, Equipment & Packing Lines     $1,600,000.00
- Packaging Inventory     $ 414,000.00

                TOTAL:     $4,261,469.43

26. The Debtor believes that Chemical has an interest in the cash collateral assets of the estate in the amount of $2,247,469.43 for Checking Accounts, Accounts Receivable, and Inventory ("Cash Collateral Assets"). CHS's lien would cover Cash Collateral Assets, however it is junior to Chemical and the amount of Chemical's lien is greater than the value of the Cash Collateral Assets.

27. The Debtor does not waive any rights it has against the Secured Creditors including, but not limited to, its avoidance powers pursuant to 11 U.S.C. § 544 *et seq*.

---

[4] Chemical has recently begun offsetting the Debtor's accounts receivable. These funds may be subject to Perishable Agricultural Commodities Act claims that are superior to Chemical, and the offset may have provided it with an improvement of position and subject to recovery. This Motion assumes the accounts receivable have not been applied against the Indebtedness.

## REQUESTED USE OF CASH COLLATERAL

28. The Debtor has immediate need for use of cash collateral to continue its operations, purchase material, meet its payroll and other necessary, ordinary course business expenditures and preserve the value of its estate for the benefit of all creditors (*see*, Declaration of Debtor's principal, Timothy M. Spiech).

29. The Debtor anticipates that it will operate at a profit throughout the 2018 crop season. The Debtor has prepared an operating budget and cash flow projections ("Budget"), attached as Exhibit "1" to Exhibit "A", which contain projected sales and an anticipated budget of necessary expenditures going forward that are necessary to be paid to avoid irreparable harm to the estate for the next thirty (30) days and provides an operating projection which shows its profitability through the 2018 crop season.

30. The Debtor estimates that it will operate at a profit as set forth in the Budget for the 2018 crop season

31. On the basis of the adequate protection submitted below, the Debtor submits that it should be granted authority to use cash collateral.

## OFFERS OF ADEQUATE PROTECTION TO SECURED CREDITORS

32. The Debtor proposes to use cash collateral to fund payment of normal and ordinary post-petition operating expenses (including, without limitation, the payment of post-petition professional fees and expenses approved by this Court in accordance with the requirements of the Code) as and when incurred, with such usage in general accordance with the Budget. The Debtor anticipates that some of its costs are variable and, as such, it anticipates that some of its expenses will be slightly lower than that presented in the Budget and some of its expenses may be slightly higher.

33. The Debtor believes that the value of the Cash Collateral Assets will positively increase over the next crop season as set forth in the Budget.

34. As adequate protection under §361 and §363 of the Code with respect to the Indebtedness and for any diminution in the Prepetition Collateral (whether Cash Collateral or otherwise), the Debtor offers the following to the Secured Creditors:

**Chemical:**

    a. The Debtor shall make the monthly payment to Chemical in the amount of $32,700.00, which will fully amortize the Indebtedness over 20 years at the interest rate of 5%:

    b. The proceeds of any sale by the Debtor of any property subject to liens held by Chemical (other than sales of inventory in the ordinary course of business) shall, unless Chemical agrees in conjunction with the approval of a sale under §363 of the Code, be paid to Chemical for application to the Indebtedness;

    c. Chemical shall be granted continuing and replacement security interests and liens in all of the Debtor's post-petition property, excluding the Debtor's rights under §§ 544, 545, 546, 547, 548, 549 and 550. However, nothing in this paragraph shall be deemed to provide Chemical with an _improvement_ of position from the values of its collateral, as of the date of the Petition nor grant any interests in any property which Chemical did not have a properly perfected lien;

    d. The Debtor reserves its rights pursuant to 11 U.S.C. § 544 *et seq.*;

    e. The Debtor shall supply financial information and information relating to the collateral as is reasonably required by Chemical. In the event that Chemical and the Debtor cannot agree as to what report(s) shall be provided to Chemical, the Court shall, upon notice and a hearing, make a determination. The Debtor anticipates providing Chemical with (i) accounts receivable aging; (ii) profit and loss statements; (iii) payables aging; (iv) such other reports and documents as are required to be filed with the Office of the United States Trustee; and (v) proof of timely payment of taxes and insurance payments required to be paid under the terms of this Court's definitive order; and

    f.    The Debtor will assign its crop insurance to Chemical as will Steven and Robin Spiech.

To the extent Leaf establishes it has a lien in cash collateral, the Debtor offers the following:

**Leaf:**

    a.    The Debtor shall pay $353.00 per month which would fully amortize the indebtedness related to the obligation with respect to the contract dated October 13, 2016 over 7 years with an interest rate of 5%;

    b.    With respect to equipment related to contracts dated February 12, 2016, the Debtor will, after consultation with the Secured Creditors, propose a sale of the equipment with all liens attaching to proceeds.

    Paragraphs c, d and e of Chemical's adequate protection offer shall apply to the secured claims of Leaf.

To the extent CHS establishes it has a lien in cash collateral, the Debtor offers the following:

**CHS:**

    a.    The Debtor shall make the monthly payment to CHS in the amount of $2,445.00 which would fully amortize its indebtedness over 7 years with an interest rate of 5%.

    Paragraphs b, c, d and e of Chemical's adequate protection offer shall apply to the secured claims of CHS.

To the extent Produce Pay establishes it has a lien in cash collateral, the Debtor offers the following:

**Produce Pay:**

    a.    The Debtor shall make the monthly payment to Produce Pay in the approximate amount of $6,515.00 which would fully amortize its indebtedness over 7 years with an interest rate of 5%. Payments shall be escrowed until it is determined if Produce Pay has a secured claim, which is not subject to avoidance.

    Paragraphs b, c, d, and e of Chemical's adequate protection offer shall apply to the secured claims of Produce Pay.

**PACA CLAIMS:**

> Chemical has offset the sum of $525,000.00 in receivables. To the extent any of the PACA Claims have valid claims, those funds should be returned to the appropriate claimants. The Debtor is providing Chemical with full adequate protection. PACA claimants shall retain their trust rights to all assets whether in possession of the Debtor or third-parties.

35. As set forth in the attached Budget and in the accompanying Declaration of Timothy M. Spiech, the Debtor will end the 2018 with an approximate value of $2,080,930.00 in frozen blueberry inventory, cash and accounts receivable compared to an approximate value of $1,692,000.00 in frozen blueberry inventory, cash and accounts receivable for the year end 2017.

36. The Debtor's authority to use cash collateral shall continue unless (i) the Debtor fails to materially comply with the terms recited in ¶ 34; (ii) a Chapter 11 Trustee is appointed for the Debtor's estate; (iii) this Chapter 11 case is converted to a proceeding under Chapter 7; and (iv) an Order is entered dismissing this case without the Secured Creditors' consent. Provided, however, that in the event that the Secured Creditors deem a default under this subsection to have occurred, the Debtor may contest the occurrence of such default and, to the extent that the Court determines that adequate protection is, in fact, adequate under the circumstances, the Debtor shall not be deemed in default hereunder.

## NOTICE AND FINAL HEARING

37. Notice of this Motion will be provided to (a) the United States Trustee for the Western District of Michigan; (b) all secured creditors identified by the Debtor which may have a claim in Cash Collateral; (c) the Debtor's twenty largest (20) unsecured creditors; (d) any other parties required to be served by Fed. R. Bankr. P. 4001; and (e) any party that has filed, prior to such date, a request for notices with this Court.

38. The Debtor further requests that the Court schedule a final hearing on this Motion and

authorize it to serve copies of an interim order entered by the Court which fixes the time, date and manner for the filing of objections to (a) the United States Trustee for the Western District of Michigan; (b) all secured creditors identified by the Debtor; (c) the Debtor's top twenty (20) unsecured creditors; (d) any other parties required to be served by Fed. R. Bankr. P. 4001; and (e) any party that has filed, prior to such date, a request for notices with this Court. The Debtor requests that the Court consider such notice of the final hearing to be sufficient under Fed. R. Bankr. P. 4001.

## CONCULSION

**WHEREFORE**, the Debtor respectfully requests this Honorable Court grant the relief requested in this Motion, authorizing the use of cash collateral, granting adequate protection pursuant to the terms of Exhibit "A" or on such terms as the Court finds just and equitable.

Respectfully submitted,

**RAYMAN & KNIGHT**
Attorneys for Debtor

Dated: November 27, 2017

By: _____
Steven L. Rayman (P30882)
Cody H. Knight (P64811)

BUSINESS ADDRESS:
141 East Michigan Avenue, Suite 301
Kalamazoo, MI 49007
Telephone: (269) 345-5156

UNITED STATES BANKRUPTCY COURT
IN THE WESTERN DISTRICT OF MICHIGAN

IN THE MATTER OF:

SPIECH FARMS, LLC,

Debtor.
_____/ /

Case No.: 17-05398
Chapter 11 - Filed: 11/22/2017

### DECLARATION OF TIMOTHY M. SPIECH

I am a member of and the day-to-day manager of Spiech Farms, LLC ("Debtor"). I am familiar with the day-to-day affairs of the Debtor and one of my primary responsibilities is to manage the Debtor's cash flow needs. I have read the Debtor's Emergency Motion for: (i) Entry of an Interim and Final Order (a) Authorizing It to Use Cash Collateral; and (b) Providing Adequate Protection and Other Relief ("Motion for Use of Cash") and the Emergency Motion for an Order Authorizing Debtor to Pay Prepetition Wages and Salaries and to Pay and Honor Certain Prepetition Employee Benefits and Related Obligations ("Employee Motion"). The factual allegations contained in the Motion for Use of Cash and Employee Motion are true and accurate. I execute this Declaration in support of the Motion for Use of Cash and Employee Motion and further verify the following information regarding each of the same:

**Facts in Support of the Motion for Use of Cash:**

The Debtor has an immediate need to use cash collateral for necessary expenses as set forth in its Motion for Use of Cash. This includes payment payroll which is due November 24, 2017 and other expenses required to prevent irreparable harm to the Debtor.

The Debtor is a major provider of fresh and frozen blueberries and fresh asparagus and grapes. The Debtor had gross sales for 2016 in the approximate amount of $15,800,000.00 and $11,800,000.00 in 2017. The 2017 blueberry crop in Georgia (where the Debtor's wholly owned



Exhibit A

subsidiary operates) had a nearly complete crop loss due to a late March frost. In fact, it lost an estimated one-million pounds of blueberries, which had a gross value of $2,500,000.00. In addition, a heavy freeze in May in Michigan caused a loss of 60% of the grape crop, resulting in a loss of gross revenue of $550,000.00. The Debtor packages and sells fruit to grocers nationwide, including Meijer, Wal-Mart, Jewel Osco, Kroger, Topco, Publix, Spartan Stores and Whole Foods. It produces over 80% of the fresh market concord grapes for the United States market and the largest grape producer of fresh table grapes east of the Mississippi. It employs between 100 and 150 employees and has had a year-to-date payroll of approximately $3,250,000.00.

As set forth in the attached Budget, the Debtor will end the 2018 with an approximate value of $2,080,930.00 in frozen blueberry inventory, cash and accounts receivable compared to an approximate value of $1,692,000.00 in frozen blueberry inventory, cash and accounts receivable for the year end 2017. I believe that the expenses and revenues set forth in the attached Budget are an accurate estimate. The budget assumes that the Debtor will only package and sell fruits grown by it or by related parties. The budget also presumes the Debtor will not sell any asparagus.

**EMPLOYEE MOTION**

Debtor pays salaries and wages to its employees and on occasion reimburses employees for certain expenses incurred on behalf of the Debtor, and provides vacation and sick time ("Employee Compensation"). It is critical that the Debtor be permitted to continue to pay and honor all Employee Compensation and pay the Employee Claims, and all costs and expenses due for the administration, servicing, and processing of the same. The Debtor has sufficient funds to pay the Employee Claims. Debtor's employees are dependent upon their wages, salaries, and benefits. If Debtor's employees are not paid, or their benefits are altered or terminated, Debtor's employees will be forced to endure significant hardships. Failure to grant the requested relief will

severely undermine the morale of the Debtor's employees and impair the Debtor's business operations in this bankruptcy case.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: November 27, 2017        By: _____
                                    Timothy M. Spiech
                                    Spiech Farms, LLC



Exhibit 1

| | 11/27 | 12/4 | 12/11 | 12/18 | 12/25 | 1/1 | 1/8 | 1/15 | 1/22 | 1/29 | 2/1/18 | 3/1/18 | 4/1/18 | 5/1/18 | 6/1/18 | 7/1/18 | 8/1/18 | 9/1/18 | 10/1/18 | 11/1/18 | 12/1/18 | Totals |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Beg Bal Cash | 825.1 | 1055.8 | 1248.6 | 1093.8 | 947.1 | 892.1 | 800.6 | 758.3 | 696.6 | 646.0 | 776.7 | 567.1 | 342.5 | 335.4 | 283.5 | 323.2 | 566.5 | 211.5 | 287.2 | 885.6 | 1126.3 | |
| Accounts Rec Due - Actual 11/14 | 280.0 | 280.0 | | | | | | | | | | | | | | | | | | | | 560.0 |
| Projected 2017 Frozen BB | | | | | | | | | | 200.0 | | | 200.0 | 200.0 | | 200.0 | | | | | | 800.0 |
| Projected 2017 Misc Sales | | | | | | | | | | | | | | | | | | | | | | 0.0 |
| Projected GA 2018 | | | | | | | | | | | | | 100.0 | 400.0 | 900.0 | 900.0 | | | | | | 2300.0 |
| Projected MI Fesh 2018 | | | | | | | | | | | | | | | | 100.0 | 500.0 | 900.0 | 500.0 | 100.0 | | 2100.0 |
| Projected MI Frozen 2018 | | | | | | | | | | | | | | | | | | | | | | 0.0 |
| Projected Grapes 2018 | | | | | | | | | | | | | | | | | | 200.0 | 900.0 | 1000.0 | 100.0 | 2200.0 |
| Projected Asparagus 2018 | | | | | | | | | | | | | | | | | | | | | | 0.0 |
| Total Cash Available | 1105.1 | 1335.8 | 1248.6 | 1093.8 | 947.1 | 892.1 | 800.6 | 758.3 | 696.6 | 846.0 | 776.7 | 567.1 | 642.5 | 935.4 | 1183.5 | 1523.2 | 1066.5 | 1311.5 | 1687.2 | 1985.6 | 1226.3 | 7960.0 |
| | | | | | | | | | | | | | | | | | | | | | | |
| Essential Payables | 11/27 | 12/4 | 12/11 | 12/18 | 12/25 | 1/1 | 1/8 | 1/15 | 1/22 | 1/29 | 2/1/18 | 3/1/18 | 4/1/18 | 5/1/18 | 6/1/18 | 7/1/18 | 8/1/18 | 9/1/18 | 10/1/18 | 11/1/18 | 12/1/18 | |
| Payroll MI | 22.9 | 16.9 | 16.9 | 16.9 | 4.9 | 16.9 | 16.9 | 16.9 | 16.9 | 16.9 | 19.4 | 19.4 | 19.4 | 19.4 | 45.8 | 419.4 | 463.0 | 489.0 | 221.0 | 115.4 | 67.4 | 2105.8 |
| Management Payroll | 4.0 | 4.0 | 4.0 | 4.0 | 4.0 | 4.0 | 4.0 | 4.0 | 4.0 | 4.0 | 18.0 | 18.0 | 18.0 | 18.0 | 18.0 | 18.0 | 18.0 | 18.0 | 18.0 | 18.0 | 18.0 | 246.0 |
| Payroll GA | 1.8 | 1.8 | 1.8 | 1.8 | 1.8 | 1.8 | 1.8 | 1.8 | 1.8 | 1.8 | 7.2 | 7.2 | 69.6 | 195.2 | 195.2 | 16.0 | 7.2 | 7.2 | 7.2 | 7.2 | 7.2 | 548.0 |
| Payroll Tax | 3.7 | 2.9 | 2.9 | 2.9 | 1.4 | 2.9 | 2.9 | 2.9 | 2.9 | 2.9 | 5.7 | 5.7 | 13.8 | 29.9 | 33.3 | 58.4 | 62.8 | 66.2 | 31.7 | 18.1 | 11.9 | 373.3 |
| BCBSM | | 8.4 | | | | 8.4 | | | | | 8.4 | 8.4 | 8.4 | 8.4 | 8.4 | 8.4 | 8.4 | 8.4 | 8.4 | 8.4 | 8.4 | 109.2 |
| Insurance MI | 11.0 | | | | 8.0 | | | | | | 9.2 | 11.4 | | | 9.0 | 9.0 | 9.0 | 9.0 | 9.0 | 9.0 | 9.0 | 120.6 |
| Insurance GA | 1.5 | | | | | | | | | | 5.0 | 5.3 | 2.2 | 5.3 | 5.3 | 5.3 | 5.3 | 5.3 | 5.3 | 5.3 | 5.3 | 56.4 |
| Crop Insurance | | | | | 11.0 | | | | | | | | | | | | | | 40.0 | | | 51.0 |
| Michigan Utilities | | 7.0 | | | | 5.0 | | | | | 3.0 | 3.0 | 5.0 | 20.0 | 20.0 | 20.0 | 20.0 | 20.0 | 20.0 | 10.0 | 10.0 | 183.5 |
| Georgia Utilities | | 2.0 | | | | 2.0 | | | | | 2.0 | 2.0 | 10.0 | 10.0 | 10.0 | 5.0 | 2.0 | 2.0 | 2.0 | 2.0 | 2.0 | 55.0 |
| Equipment Maint | 1.0 | 1.0 | 1.0 | 1.0 | 1.0 | 1.0 | 1.0 | 1.0 | 1.0 | 1.0 | 4.0 | 6.0 | 6.0 | 6.0 | 6.0 | 6.0 | 6.0 | 6.0 | 6.0 | 6.0 | 4.0 | 72.0 |
| Buildings Maint | 1.0 | 1.0 | 1.0 | 1.0 | 1.0 | 1.0 | 1.0 | 1.0 | 1.0 | 1.0 | 4.0 | 4.0 | 4.0 | 4.0 | 9.0 | 9.0 | 9.0 | 9.0 | 4.0 | 4.0 | 4.0 | 74.0 |
| Migrant Housing Rent | | 1.0 | | 13.0 | | 1.0 | | | | | 1.0 | 1.0 | 1.0 | 1.0 | 1.0 | 1.0 | 1.0 | 1.0 | 1.0 | 1.0 | 1.0 | 26.0 |
| Vehicle Allowances | | 2.0 | | | | 2.0 | | | | | 2.0 | 2.0 | 2.0 | 2.0 | 2.0 | 2.0 | 2.0 | 2.0 | 2.0 | 2.0 | 2.0 | 26.0 |
| Administrative Fees | | 15.0 | | | | 15.0 | | | | | | 8.0 | | | 15.0 | | | | | | 15.0 | 68.0 |
| High Bush Council | | | | | | | | | | | | | | | | | | | | | 23.3 | 23.3 |
| HQ and Packing house Lease | | 2.0 | | | | 2.0 | | | | | 2.0 | 2.0 | 2.0 | 2.0 | 2.0 | 2.0 | 2.0 | 2.0 | 2.0 | 2.0 | 2.0 | 26.0 |
| Equipment Shop | | 0.0 | | | | 0.0 | | | | | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 |
| Blueberry Land Leases | | | 107.0 | | | | | | | | | | | 100.0 | 149.0 | | | | 311.0 | | | 667.0 |
| Grape Land Leases | | 0.0 | | | | 0.0 | | | | 20.0 | | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 20.0 |
| Frozen Leased Space | | 20.5 | | | 20.5 | | | | | | 20.5 | 8.0 | 6.0 | 4.0 | 4.0 | 4.0 | 4.0 | 6.0 | 8.0 | 10.0 | 10.0 | 146.0 |
| Sprays & Fertelizers | | | | | | | | | | 20.3 | 20.3 | 20.3 | 20.3 | 33.8 | 33.8 | 33.8 | 33.8 | 33.8 | 7.5 | | | 257.3 |
| Packaging | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 10.0 | 40.0 | 90.0 | 100.0 | 50.0 | 110.0 | 140.0 | 110.0 | 10.0 | 660.0 |
| Shipping | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 10.0 | 13.0 | 52.0 | 117.0 | 130.0 | 65.0 | 143.0 | 182.0 | 143.0 | 13.0 | 868.0 |
| Fuel | 1.0 | 1.0 | 3.0 | 1.0 | 1.0 | 1.0 | 1.0 | 1.0 | 2.0 | 1.0 | 4.0 | 4.0 | 8.6 | 8.6 | 8.6 | 8.6 | 8.6 | 8.6 | 8.6 | 4.0 | 4.0 | 91.2 |
| Packing Supplies | | 1.0 | | | | | 1.0 | | | | | 5.0 | 5.0 | 5.0 | 5.0 | 5.0 | 5.0 | 5.0 | 5.0 | | | 42.0 |
| Office Supplies | 0.5 | 0.5 | 0.5 | 0.5 | 0.5 | 0.5 | 0.5 | 0.5 | 0.5 | 0.5 | 2.0 | 2.0 | 2.0 | 2.0 | 2.0 | 2.0 | 2.0 | 2.0 | 2.0 | 2.0 | 2.0 | 28.0 |
| Administrative Utilities / Subscriptions | 1.0 | 0.2 | | | | | | | | | 3.2 | 3.2 | 3.2 | 3.2 | 3.2 | 3.2 | 3.2 | 3.2 | 3.2 | 3.2 | 3.2 | 44.8 |
| Total Essential Payments | 49.3 | 87.2 | 142.3 | 42.1 | 55.0 | 64.5 | 33.3 | 29.1 | 50.6 | 69.3 | 140.9 | 155.9 | 238.4 | 578.8 | 792.6 | 866.2 | 787.3 | 956.6 | 733.9 | 791.6 | 232.7 | 6969.4 |
| Cash Available for Acct Payable | 11/27 | 12/4 | 12/11 | 12/18 | 12/25 | 1/1 | 1/8 | 1/15 | 1/22 | 1/29 | 2/1/18 | 3/1/18 | 4/1/18 | 5/1/18 | 6/1/18 | 7/1/18 | 8/1/18 | 9/1/18 | 10/1/18 | 11/1/18 | 12/1/18 | |
| Accumulated Cash Available | 1055.8 | 1248.6 | 1106.3 | 1051.8 | 892.1 | 827.6 | 767.3 | 729.3 | 646.0 | 776.7 | 635.8 | 411.2 | 404.1 | 356.6 | 390.9 | 657.2 | 279.2 | 354.9 | 953.3 | 1194.0 | 993.6 | |
| Total Secured Debt Paid | 0.0 | 0.0 | 12.5 | 104.7 | 0.0 | 27.0 | 9.0 | 32.7 | 0.0 | 0.0 | 68.7 | 68.7 | 68.7 | 73.2 | 67.7 | 90.7 | 67.7 | 67.7 | 67.7 | 67.7 | 112.7 | 985.5 |
| Accumulated Cash Flow | 1055.8 | 1248.6 | 1093.8 | 947.1 | 892.1 | 800.6 | 758.3 | 696.6 | 776.7 | 776.7 | 567.1 | 342.5 | 335.4 | 283.5 | 323.2 | 566.5 | 211.5 | 287.2 | 885.6 | 1126.3 | 880.9 | 0.0 |
| | | | | | | | | | | | | | | | | | | | YTD Liquidity Improvel | 388.9 | | |
| Frozen Inventory | $800 | $800 | $800 | $800 | $800 | $800 | $800 | $800 | $800 | $600 | $600 | $600 | $400 | $200 | $200 | $200 | $800 | $1,200 | $1,200 | $1,200 | 1200.0 | |
| Cash | $1,056 | $1,249 | $1,094 | $947 | $892 | $801 | $758 | $697 | $646 | $777 | $567 | $343 | $335 | $283 | $323 | $566 | $212 | $287 | $886 | $1,126 | 880.9 | |
| Total | $1,856 | $2,049 | $1,894 | $1,747 | $1,692 | $1,601 | $1,558 | $1,497 | $1,446 | $1,377 | $1,167 | $943 | $735 | $483 | $523 | $766 | $1,012 | $1,487 | $2,086 | $2,326 | 2080.93 | |

UNITED STATES BANKRUPTCY COURT
IN THE WESTERN DISTRICT OF MICHIGAN

IN THE MATTER OF:

SPIECH FARMS, LLC,

Debtor.

_____/ /

Case No.: 17-05398
Chapter 11 - Filed: 11/22/2017

ORDER GRANTING
DEBTOR'S EMERGENCY MOTION FOR
(i) ENTRY OF AN INTERIM AND FINAL ORDER
(a) AUTHORIZING IT TO USE CASH COLLATERAL; AND
(b) PROVIDING ADEQUATE PROTECTION AND OTHER RELIEF

PRESENT:   HONORABLE JOHN T. GREGG
United States Bankruptcy Judge

**THIS MATTER** having come to be heard upon the Debtor's Emergency Motion for: (i) Entry of an Interim and Final Order (a) Authorizing It to Use Cash Collateral; and (b) Providing Adequate Protection and Other Relief ("Motion"); and the Court noting due service upon all creditors and parties in interest; and the Court being otherwise fully advised in the premises;

**IT IS THEREORE ORDERED:**

1. The Debtor may use cash collateral to fund payment of normal and ordinary post-petition operating expenses (including, without limitation, the payment of post-petition professional fees and expenses approved by this Court in accordance with the requirements of the Code) as and when incurred through and including the date of the Final Hearing delineated herein.

2. The Debtor shall comply with ¶34 of the Motion in order to provide Chemical adequate protection pursuant to §§361 and 363 of the Code with respect to the Indebtedness and for any diminution in the Prepetition Collateral (whether Cash Collateral or otherwise) pursuant to §361(2).



Exhibit B

3. The Debtor's authority to use cash collateral shall continue unless: (i) the Debtor fails to materially comply with the terms recited in ¶34 of the Motion; (ii) a Chapter 11 Trustee is appointed for the Debtor's estate; (iii) this Chapter 11 case is converted to a proceeding under Chapter 7; and (iv) an Order is entered dismissing this case without Chemical's consent.

4. A Final Hearing on the Debtor's Motion will be held on _____, at _____, at the United States Bankruptcy Court for the Western District of Michigan located at _____ ("Final Hearing") which may be adjourned or continued by the Court at the Final Hearing. Within 48 hours of the entry of this Order, or if this Order shall be entered on a Friday or a day immediately preceding a legal holiday then, by the conclusion of the next business day, the Debtor shall serve, or cause to be served, a copy of this Order on all parties required to be served under Fed. R. Bankr. P. 4001(d), including (a) all creditors holding secured claims of record; (b) any creditors' committee appointed pursuant to § 1102 of the Code, or if no committee, Debtor's twenty largest (20) unsecured creditors; (c) all parties who have timely filed requests for notice under Bankruptcy Rule 2002; (e) those parties identified by the Debtor as having made trust claims under the Perishable Agricultural Commodities Act and (e) the United States Trustee. Any objection to this Order shall be in writing and shall be filed with the Court and served upon the Debtor (Rayman & Knight, 141 E. Michigan Avenue, Suite 301, Kalamazoo, MI 49007); and upon the United States Trustee not later than five (5) days prior to the date set for the Final Hearing as set forth above.

5. If no objection is made to this Order, it may become final at the Final Hearing.

This Document Prepared By:
**RAYMAN & KNIGHT**
141 E. Michigan Avenue, Suite 301
Kalamazoo, MI 49007
Telephone: (269) 345-5156

**END OF ORDER**