**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE WESTERN DISTRICT OF MICHIGAN**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| SPIECH FARMS LLC, | ) | Case No. 17-BK-05398 (JTG) |
| | ) | |
| Debtor. | ) | |
| | ) | |

**MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEBTOR'S**
**MOTION FOR ORDER AUTHORIZING USE OF CASH COLLATERAL**

Produce Pay, Inc. (hereinafter "*Produce Pay*"), by and through its undersigned counsel, hereby submits the following Memorandum of Points and Authorities in Opposition to Spiech Farms LLC's (the "*Debtor*") Emergency Motion for Entry of an Interim and Final Orders (a) Authorizing It to Use Cash Collateral; and (b) Providing Adequate Protection and Other Relief [D.E. # 6] and Debtor's Emergency Motion for an Order Authorizing Debtor to Pay Prepetition Wages and Salaries and to Pay and Honor Certain Prepetition Employee Benefits and Related Obligations [D.E. # 7] (collectively the "*Motions*").  Pursuant to 11 U.S.C. sections 105(a), 361, 363(b) and 507(a) and rules 4001 Federal Rules of Bankruptcy Procedure and L.B.R. 4001-3 (W.D.M.).

I.    **INTRODUCTION**

One of the most misunderstood and hotly contested areas of litigation under the Perishable Agricultural Commodities Act[1] (the "*PACA*") involves balancing the rights of a secured lender against an unpaid PACA trust beneficiary.  A significant contributing factor to the misunderstandings appurtenant to such litigation is the shortage of controlling case law.

---

[1] 7 U.S.C.S §§ 499a-499t (2016).

Page 1 of 22

WALLACE JORDAN RATLIFF & BRANDT LLC
JASON R. KLINOWSKI, ESQ.
800 SHADES CREEK PARKWAY, SUITE 400
BIRMINGHAM, ALABAMA 35209
TEL: (205) 874-0371 · FAX: (205) 874-3287

Therefore, in an effort to guide both the Court and the litigants through such a dispute, this memorandum of points and authorities provides an explanation of the PACA trust and its limits.

## II.    BACKGROUND

### A.    SUMMARY OF THE PERISHABLE AGRICULTURAL COMMODITIES ACT

Enacted in 1930, Congress has described PACA as "admittedly and intentionally a tough law." *G&T Terminal Packaging Co., Inc. v. U.S. Dept. of Agriculture*, 468 F.3d 86, 88 (2d. Cir. 2006) (citing S. Rep. No. 84-2507, at 3 (1956), *as reprinted in* 1956 U.S.C.C.A.N. 3699, 3701)). "The law was designed primarily for the protection of the producers of perishable agricultural products -- most of whom must entrust their products to a buyer or commission merchant who may be thousands of miles away, and depend for their payment upon his business acumen and fair dealing. . . ." *Id.*

Congress recognized a significant and growing payment problem in the early 1980's. *See* H. Rep. No. 543, 98th Cong., 1st Sess. (1983), reprinted in 1984 U.S. Code Cong & Admin News 405, 406. The USDA estimated that an additional ten percent (10%) was added to the consumer's purchase price of fruits and vegetables to make up the losses due to nonpayment for produce. *Id.* at 412. Congress intended for PACA to remedy this "abnormal risk of losses resulting from slow-pay and no-pay practices by buyers or receivers of fruits and vegetables." 49 Fed. Reg. 45735, *45737, 1984 WL 134664 (USDA Nov. 20, 1984). Congress therefore amended PACA in 1984 by adding Section 5(c), 7 U.S.C. § 499e(c), "to increase the legal protection for unpaid sellers and suppliers of perishable agricultural commodities[2] until full payment of sums due have been received by them." 1984 U.S. Code Cong & Admin News at 406.

---

[2] Perishable Agricultural Commodities shall hereinafter be referred to as "*Produce*."

WALLACE JORDAN RATLIFF & BRANDT LLC
JASON R. KLINOWSKI, ESQ.
800 SHADES CREEK PARKWAY, SUITE 400
BIRMINGHAM, ALABAMA 35209
TEL: (205) 874-0371 · FAX: (205) 874-3287

PACA's primary protection mechanism is the PACA trust, under which

[p]erishable agricultural commodities received by a commission merchant, dealer, or broker . . . and any receivables or proceeds from the sale of such commodities . . . *shall be held by such commission merchant, dealer or broker in trust* for the benefit of all unpaid suppliers or sellers of such commodities . . . until full payment of the sums owing in connection with such transactions has been received. . . .

*E. Armata, Inc. v. Korea Comm. Bank of New York*, 367 F.3d 123, 128 (2nd Cir. 2004) (citing 7 U.S.C. § 499e(c)(2)). This provision "impresses a non-segregated 'floating trust' on the commodities and their derivatives. . . ." *American Banana Co., Inc. v. Republic Nat. Bank of New York, N.A.*, 362 F.3d 33, 38 (2nd Cir. 2004); *see also In re Kornblum & Co., Inc.*, 81 F.3d 280, 287 (2nd Cir. 1996); *Consumers Produce Co. v. Volante Wholesale Produce, Inc.*, 16 F.3d 1374, 1378 (3rd Cir. 1994); *Sanzone-Palmisano Co. v. M. Seaman Enterprises, Inc.*, 986 F.2d 1010, 1014 (6th Cir. 1993).

Thus, PACA is a federal statutory structure which "gives growers and sellers of perishable produce priority interests in the assets of the brokers and dealers who purchase their goods on credit by imposing a statutory trust on the perishable goods and their proceeds." *D.M. Rothman & Co., Inc. v. Korea Comm. Bank of New York*, 411 F.3d 90, 93 (2d. Cir. 2005). The PACA trust also provides PACA creditors with "a right to recover against the purchasers superior to all creditors, including secured creditors." *E. Armata, Inc.*, 367 F.3d at 128.

B.    DEBTOR AS CORPORATE TRUSTEE OF THE PACA TRUST

The PACA "trustee" is the Produce company that buys the Produce and is charged with maintaining sufficient PACA trust assets to pay its PACA trust beneficiaries as their invoices become due. The trustee of the PACA trust is obligated to "maintain trust assets in a manner that such assets are freely available to satisfy outstanding obligations to sellers of perishable agricultural commodities. Any act or omission which is inconsistent with this responsibility,

WALLACE JORDAN RATLIFF & BRANDT LLC
JASON R. KLINOWSKI, ESQ.
800 SHADES CREEK PARKWAY, SUITE 400
BIRMINGHAM, ALABAMA 35209
TEL: (205) 874-0371 · FAX: (205) 874-3287

including dissipation of the trust assets, is unlawful and in violation of [PACA]." 7 C.F.R. § 46.46(d)(1). PACA regulations define "dissipation" as "any act or failure to act which could result in the diversion of trust assets or which could prejudice or impair the ability of unpaid suppliers, sellers, or agents to recover money owed in connection with produce transactions." *D.M. Rothman & Co., Inc.,* 411 F.3d at 94 (citing 7 C.F.R. § 46.46(a)(2)).

    C.    <u>THE PACA TRUST</u>

The PACA trust commences by operation of law upon delivery of the Produce and continues until full payment for the Produce has been made. 7 U.S.C. § 499e(c)(2); 7 C.F.R. § 46.46(d)(1). Once the seller delivers the Produce, failure of the buyer (as trustee) to maintain trust assets sufficient to make full payment promptly to the trust beneficiaries is unlawful. 7 U.S.C. § 499b(4); *See also Collins Brothers v. Perrine*, 2006 Bankr. LEXIS 2516 *14-15 (Bankr. N.D. Ga. Aug. 8, 2006) ("Use of the trust assets for any purpose other than paying the produce seller, including the payment of legitimate business expenses, is a violation under PACA."). A breach of fiduciary duty, for example, exists when the proceeds from the sale of perishable agricultural products are used for even "legitimate business expenditures, such as the payment of rent, payroll, or utilities." *Morris Okun, Inc. v. Harry Zimmerman, Inc.*, 814 F. Supp. 346, 348 (S.D.N.Y. 1993). *See also Sunkist Growers, Inc. v. Fisher*, 104 F.3d 280 (9th Cir. 1997); *In re Baird*, 114 B.R. 198, 204 (9th Cir. 1990); *In re Zois*, 201 B.R. 501 (Bankr. N.D. Ill. 1996); *In re Al Nagelberg & Co*., 84 B.R. 19 (S.D.N.Y. 1988); *Hiller Cranberry Prods. v. Koplovsky*, 165 F.3d 1 (1st Cir. 1999) (ruling that use of PACA trust assets for purposes other than payment of PACA creditors, without keeping an adequate reserve for payment, constitutes an unlawful dissipation of trust assets).

The principal benefit of the trust for a Produce seller is that when a buyer fails to pay or becomes insolvent, the seller is placed first in line among creditors to receive the trust *res,* which consists of all assets of the debtor unless and until the debtor proves a particular asset was acquired with something other than the proceeds of the debtor's dealings in Produce.  *Frio Ice, S.A. v. Sunfruit, Inc.*, 918 F.2d 154, 156 (11th Cir. 1990); s*ee also In re Monterey House*, 71 B.R. 244, 249 (Bankr. S.D. Tex. 1986).  The PACA trust *res* serves as a fund from which unpaid Produce sellers can be assured payment.  By operation of trust law, while a buyer of Produce has legal title to the PACA trust *res*, **equitable** title remains with the seller of the Produce.

The establishment of the PACA trust occurs upon the commencement of the buyer's buying and selling of Produce and exists continuously throughout the life of the buyer's business until the PACA sellers are paid in full.  Any assets purchased while the trust is in existence will be assumed to be purchased with trust assets and will, therefore, become part of the PACA trust fund assets available to satisfy the claims of the qualified unpaid PACA sellers.  *In re Atlantic Tropical Market*, 118 B.R. 139, 142 (Bankr. S.D. Fla. 1990).  When PACA trust assets are commingled with funds not subject to the trust, the trust is impressed upon the entire commingled fund for the benefit of the PACA trust beneficiaries.  *In re Gotham Provision*, 669 F.2d 1000 (5th Cir. 1982).

D.    PACA ASSET TRACING

(i)    *Two Party Dispute Resolution Proceeding*

With respect to any issue of tracing assets, the *Atlantic Tropical Market* court considered this legislative history when it placed **on the buyer** the burden to "track the status of the trust fund and to provide evidence of other origin of purchases of assets."  *In re Atlantic Tropical Market*, 118 B.R. at 142 (citing *In re Al Nagelberg & Co.*, 84 B.R. 19 (S.D.N.Y. 1988)); *In re*

WALLACE JORDAN RATLIFF & BRANDT LLC
JASON R. KLINOWSKI, ESQ.
800 SHADES CREEK PARKWAY, SUITE 400
BIRMINGHAM, ALABAMA 35209
TEL: (205) 874-0371 · FAX: (205) 874-3287

*Fresh Approach, Inc.*, 51 B.R. 412, 422 (Bankr. N.D. Tex. 1985) ("Should a dispute arise, it will be the buyers' burden to establish which, if any, assets are not subject to the PACA trust."); *In re N. Merberg & Sons*, 166 B.R. 567, 570 (Bankr. S.D.N.Y. 1994); *Six L's Packing v. West Des Moines State Bank*, 967 F.2d 256, 258 (8th Cir. 1992). The Produce buyer is required to maintain PACA trust assets so that such assets are freely available to satisfy all outstanding obligations to Produce sellers. 7 C.F.R. § 46.46(e). This obligation is plainly set forth in the PACA statute. 7 U.S.C. § 499(b)(4).

In *Sanzone-Palmisano Co. v. Seaman Enterprises*, 986 F.2d 1010 (6th Cir. 1993), the Sixth Circuit provided a detailed discussion of tracing and the policy reasons for placing the burden on the buyer/debtor, recognizing:

> that in most cases it will be virtually impossible for a PACA debtor to trace the origin of the disputed assets . . . [However, w]e believe that **this is the outcome that Congress intended**.

*Id.* at 1014 (emphasis added). After finding the supplier had established the validity of its PACA trust interest, the Court stated the burden on remand to the district court is on the buyer to

> prove which seized assets were not purchased with funds from the sale of produce. **All of the seized assets that cannot be traced to a non-trust source are part of the trust res and are subject to [supplier's] trust claim.**

*Id.* (emphasis added).

### (ii)    Cash Collateral Proceedings

A cash collateral hearing is a contested matter under 11 U.S.C. § 363 to determine whether the court should authorize the Debtor in Possession ("*DIP*") to use estate property, including cash collateral and other property (as adequate protection for the interests of others). *In Re: Cherry Growers, Inc.*, 2017 WL 4990443 *3 (W.D. Mich. 2017). It is not a proceeding to resolve, as a final matter, competing property interests. *Id.* On the contrary, Congress addresses

WALLACE JORDAN RATLIFF & BRANDT LLC
JASON R. KLINOWSKI, ESQ.
800 SHADES CREEK PARKWAY, SUITE 400
BIRMINGHAM, ALABAMA 35209
TEL: (205) 874-0371 · FAX: (205) 874-3287

who bears the various burdens of proof in a cash collateral or adequate protection hearing under

§ 363(p), which states in relevant part:

> [i]n any hearing under this section –
>
> (1) the trustee has the burden of proof on the issue of adequate protection; and
>
> (2) the entity asserting an interest in property has the burden of proof on the issue of validity, priority, or extent of such interest.

*In Re: Cherry Growers, Inc.*, 2017 WL 4990443 *4 (W.D. Mich. 2017).(citing 11 U.S.C. §

363(p)).  The court, therefore, must harmonize the burden of proof in a two-party dispute under

PACA with the burdens in a contested cash collateral proceeding, a collective proceeding

involving the rights of the DIP, secured creditors, and unsecured creditors alike.  *Id.*  To this end,

if a PACA creditor establishes the amount of its claim and that it preserved its rights as a

beneficiary of the PACA trust under 7 U.S.C. § 499e, it will have met its burden under § 363(p)

on the issue of its interest in the disputed property.  *Id.*

### E.    DEBTOR'S FINANCIAL STABILITY IS REQUIRED BY LAW

Congress expressly recognized that PACA

> **. . . is admittedly and intentionally a 'tough law.'**  It was enacted in 1930 for the purpose of providing a measure of control and regulation over a branch of industry which is engaged almost exclusively in interstate commerce, which is highly competitive, and in which the opportunities for sharp practices, irresponsible business conduct, and unfair methods are numerous.  The law was designed primarily for the protection of the producers of perishable agricultural products-- most of whom must entrust their products to a buyer or commission merchant who may be thousands of miles away, and depend for their payment upon his business acumen and fair dealing . . . .

S. Rep. No. 84-2507, at 3 (1956), *as reprinted in* 1956 U.S.C.C.A.N. 3699, 3701 (emphasis

added); *accord Perfectly Fresh Farms, Inc. v. U.S. Dep't of Agric.*, 692 F.3d 960, 964 (9th Cir.

2012); *Ruby Robinson Co., Inc. v. Herr*, 453 F. App'x 463, 465 (5th Cir. 2011); *Finer Foods*

*Sales Co., Inc. v. Block*, 708 F.2d 774, 781 (D. D.C. 1983) ("As Congress noted in amending the

Act in 1956, '[PACA] is admittedly and intentionally a "tough" law.'"); *Harry Klein Produce*

WALLACE JORDAN RATLIFF & BRANDT LLC
JASON R. KLINOWSKI, ESQ.
800 SHADES CREEK PARKWAY, SUITE 400
BIRMINGHAM, ALABAMA 35209
TEL: (205) 874-0371 · FAX: (205) 874-3287

*Corp. v. U.S. Dep't of Agric.*, 831 F.2d 403, 405 (2d Cir. 1987) (noting that PACA is an "intentionally rigorous law"); *see also Hawkins v. Agric. Mktg. Serv., Dept' of Agric., U.S.*, 10 F.3d 1125, 1131 (5th Cir. 1993) ("[A]ny investor in a perishable commodities corporation should know at the beginning of his association with such a corporation that he is 'buying into' a corporation which is strictly regulated by the federal government through the PACA.").

PACA recognizes the "need to have **financially responsible** persons as licensees or employees of licensees" involved in the produce industry. *Marvin Tragash Co., Inc. v. U.S. Dep't of Agric.*, 524 F.2d 1255, 1257 (5th Cir. 1975) (emphasis added); *accord Zwick v. Freeman*, 373 F.2d 110, 117 (2d Cir. 1967); *United States v. Gilardi Truck & Transp., Inc.*, 815 F.2d 706 (Table) at *2 (6th Cir. 1987); *see also Harry Klein Produce Corp.*, 831 F.2d at 405 ("The PACA is a remedial statute designed to ensure that commerce in agricultural commodities is conducted in an atmosphere of financial responsibility."); *Finer Foods Sales Co., Inc.*, 708 F.2d at 782 (defining PACA's goal as "that only financially responsible persons should be engaged in the businesses subject to the Act"); *Chidsey v. Geurin*, 443 F.2d 584, 588-89 (6th Cir. 1971) ("[T]he Act was generally intended to keep financially unsound persons from maintaining a license.").

Section 2 of PACA requires that licensees abide by certain requirements, including full prompt payment. *Finer Foods Sales Co., Inc.*, 708 F.2d at 776 (citing 7 U.S.C. § 499b(4)). "A buyer's failure to tender prompt payment triggers civil liability . . . . The PACA is 'admittedly and intentionally a "tough" law.'" *Baiardi Food Chain v. United States*, 482 F.3d 238, 241 (3d Cir. 2007) (citation omitted); *see also id.* at 242 (noting that Section 2 "imposes several strict requirements on regulated buyers and sellers"). Decisions under PACA repeatedly hold that "all excuses are routinely rejected in determining whether payment violations occurred . . . since '**the**

WALLACE JORDAN RATLIFF & BRANDT LLC
JASON K. KLINOWSKI, ESQ.
800 SHADES CREEK PARKWAY, SUITE 400
BIRMINGHAM, ALABAMA 35209
TEL: (205) 874-0371 · FAX: (205) 874-3287

**Act calls for payment-not excuses**.'"  *Finer Foods Sales Co., Inc.*, 708 F.2d at 781 (emphasis added).  PACA's "strict policy" in this regard ensures that "a licensee is required to conduct his business in a manner that insures that he pays his bills fully and promptly.  If he fails to do so, he violates the Act." *Id.* at 782.

The reason for PACA's strict adherence standards is because "[f]ailure to pay violations not only adversely affect the party who is not paid for the produce, but **such violations have a tendency to snowball**. 'On occasions, one licensee fails to pay another licensee who is then unable to pay a third licensee.' **This could have serious repercussions to producers, licensees and consumers**."  *Finer Foods Sales Co., Inc.*, 708 F.2d at 782 (citation omitted) (emphasis added).  PACA debtors, such as the Defendants, "who suffer a financial loss or otherwise become in a precarious financial position continue to operate for many months and even increase their business substantially, without obtaining new capital, thereby subjecting many persons who sell produce to them to the risk of financial loss."  *In re: The Caito Produce Co.*, 48 Agric. Dec. 602, 622 (U.S.D.A. 1989).  Accordingly, licensees who "extend credit to its purchasers in this regulated industry . . . must be adequately capitalized to be able to sustain any losses that result. If losses occur which jeopardize a licensee's ability to meet its obligations, it must immediately obtain more capital, or suffer the consequences if violations occur."  *Id.* at 620.

"While admittedly the result Congress desired could be harsh in some cases, we cannot say that [PACA] is not reasonably designed to achieve the desired Congressional purpose." *Kleiman & Hochberg, Inc. v. U.S. Dep't of Agric.*, 497 F.3d 681, 690 (D. D.C. 2007) (citation omitted).  "Occasional hardship to the individual is a consideration outweighed by the public interest and the declared policy of Congress." *Callaghan v. Reconstruction Fin. Corp.*, 297 U.S. 464, 468 (1936).

WALLACE JORDAN RATLIFF & BRANDT LLC
JASON R. KLINOWSKI, ESQ.
800 SHADES CREEK PARKWAY, SUITE 400
BIRMINGHAM, ALABAMA 35209
TEL: (205) 874-0371 ·FAX: (205) 874-3287

PACA is such a strong piece of legislation that even bankrupt individuals are not exempt from its requirements. *See Marvin Tragash Co., Inc.*, 524 F.2d at 1257. This exemption likewise applies to the Packers and Stockyards Act, 1921, *as amended*, 7 U.S.C. §§ 181-229 ("*PASA*"). *See* 11 U.S.C. § 525(a).

> Under the Packers and Stockyards Act, . . . [t]he licenses of market agencies and dealers may be suspended if they become insolvent. Packers may be ordered to cease and desist from failing to pay for livestock and packers who become insolvent may be ordered to cease and desist from operation except under such conditions as the Secretary may impose.

*In re: The Caito Produce Co.*, 48 Agric. Dec. at 621 (citing Proceedings and Debates of the 95th Cong., 1st Sess., Vol. 19, pp. H 117610H 11762 (Oct. 28, 1977)). Thus, the PASA provides that an insolvent licensee may be enjoined from operating. *See, e.g.*, 7 U.S.C. § 228a (person operating while insolvent may be enjoined from operating). In enacting PACA, Congress expressly modeled PACA's provisions on the PASA. *See In re Asinelli, Inc.*, 93 B.R. 433, 435 n.3 (M.D. N.C. 1988) ("The Court notes that the PACA trust provisions were expressly modeled on similar trust provisions amended to the Packers and Stockyards Act, and that decisions interpreting the PSA guide the present interpretation of the PACA."); *In re CFP Liquidating Estate*, 405 B.R. 694, 697 n.3 (D. Del. 2009) ("[T]he provisions of PACA are sufficiently similar [to the PASA] such that, as Congress dictated, case law interpreting one act is instructive when interpreting the other."); *In re Marvin Props., Inc.*, 76 B.R. 150, 152 (9th Cir. B.A.P. 1987) ("In enacting PACA, Congress intended for courts to look at caselaw developed under a similar law passed in the Packers and Stockyards Act . . . for guidance."). Courts interpreting PACA indicate that **insolvency is where a person's liabilities exceed his assets**. *See, e.g.*, *Skyline Potato Co., Inc. v. Hi-Land Potato Co., Inc.*, 188 F. Supp. 3d 1097, 1118 (D. N.M. 2016) (emphasis added).

WALLACE JORDAN RATLIFF & BRANDT LLC
JASON R. KLINOWSKI, ESQ.
800 SHADES CREEK PARKWAY, SUITE 400
BIRMINGHAM, ALABAMA 35209
TEL: (205) 874-0371 · FAX: (205) 874-3287

As under the PASA, a financially irresponsible PACA licensee should be enjoined from continuing to operate.  Given PACA's admittedly tough standards, requiring payment without excuse and ensuring that only the financially sound to remain licensees, and given the detrimental ramifications in the produce industry where a licensee does not meet these high standards, a buyer of Produce, such as the Debtor in this case, which continues to operate in violation of PACA creates substantial financial risk for all of its PACA creditors/unpaid suppliers of Produce, including Produce Pay.

## III.  PRODUCE PAY IS THE HOLDER OF A PROPERLY PERFECTED PACA TRUST CLAIM IN AND TO ALL OF THE DEBTOR'S PACA TRUST ASSETS

On or about August 31, 2017, Produce Pay and Debtor entered into a written Distribution Agreement (the "*Agreement*").  A true and correct copy of the Agreement is attached hereto as Exhibit A.  Pursuant to the Agreement, Debtor registered certain distributed asset pools (i.e., Produce it owned) with Produce Pay's "Platform" and certified that "it has title to such Distributed Asset Pool and is legally capable of transferring the title to [Produce Pay]. Agreement at Sec. 1(d).  Thereafter, Produce Pay would evaluate the Distributed Asset Pool the Debtor registered and, relying upon the representations and warranties the Debtor made appurtenant thereto (*See* Exhibit A at Sec. 11.1), would purchase said Distributed Asset Pool sight unseen.  Importantly, the aforementioned Produce sale from Debtor to Produce Pay occurs digitally.  Upon Produce Pay's election to purchase a Distributed Asset Pool and its payment to Debtor, title to the subject Produce would pass from Debtor to Produce Pay along with all of the Debtor's "right, title, and interest" in and to said Produce.  The foregoing is a digital transaction.

Thereafter, Produce Pay would utilize Debtor to sell its newly acquired Produce to third parties.  Specifically, Debtor would serve as a consignment agent and sell Produce Pay's Produce to third parties.  As such, legal title to Produce Pay's Produce passed from Produce Pay to the

WALLACE JORDAN RATLIFF & BRANDT LLC
JASON R. KLINOWSKI, ESQ.
800 SHADES CREEK PARKWAY, SUITE 400
BIRMINGHAM, ALABAMA 35209
TEL: (205) 874-0371 · FAX: (205) 874-3287

Debtor's customer and not to the Debtor.  Rather, Debtor served as a consignment agent of Produce Pay with nothing more than a mere right to possess Produce Pay's Produce.  *See* Exhibit A at Sec. 3.2 and 4.2.  Of course, Debtor invoiced its customers for Produce Pay's Produce and collected the gross sales proceeds for Produce Pay.  *See* 46.46(c)(2).  At all times relevant hereto, Debtor sold grapes and blueberries as consignment agent for Produce Pay, both of which are PACA covered commodities.

The term "dealer" means any person engaged in the business of buying or selling in wholesale of jobbing quantities, as defined by the Secretary, any perishable agricultural commodity in interstate of foreign commerce.  7 U.S.C. § 499a(6).  In this case, the Debtor qualifies as a dealer of Produce under PACA because it purchased and sold more than $230,000 of Produce annually and it dealt in single Produce transactions involving Produce that weighed in excess of 2,000 pounds.  A cursory review of Debtor's Pallet Shipment Report to Produce Pay illustrates weight of said transactions.  *See* Produce Pay's PACA Trust Chart and Back-up attached hereto as <u>Exhibit B</u>.  Notwithstanding any argument or finding to the contrary, "any person not considered to be a 'dealer' under clauses (A), (B), and (C) [of 7 U.S.C. § 499a(6)] may elect to secure a license under the provisions of section 3 of this Act, and in such case and while the license is in effect such person shall be considered a 'dealer.'"  7 U.S.C. § 499a(6).  *See* <u>Exhibit C</u>.  To this end, Produce Pay is the holder of PACA license number 20150951 and is a licensed dealer of Produce.

Produce Pay, as a PACA licensee, utilized its Confirmations of Sale to Debtor to preserve its PACA trust rights pursuant to 7 U.S.C. § 499e(c)(4) and placed the following statement on the face of each confirmation of sale:

> The perishable agricultural commodities listed on this invoice are sold subject to statutory trust authorized by section 5(c) of the Perishable Agricultural

MEMORANDUM OF POINTS AND AUTHORITIES

Page 12 of 22

WALLACE JORDAN RATLIFF & BRANDT LLC
JASON R. KLINOWSKI, ESQ.
800 SHADES CREEK PARKWAY, SUITE 400
BIRMINGHAM, ALABAMA 35209
TEL: (205) 874-0371 · FAX: (205) 874-3287

Commodities Act, 1930 (7 U.S.C. 499e(c)).  The seller of these commodities, all inventories of food or other products derived from these commodities, and any receivables or proceeds from the sale of these commodities until full payment is received.

Produce Pay's inclusion of the foregoing notice language on all of its Confirmations of Sale documents to Debtor preserved its beneficial interest in and to Debtor's PACA trust assets. Importantly, Produce Pay did not invoice Debtor because Produce Pay did not sell Produce to Debtor.  Rather, Produce Pay utilized Debtor as a consignment agent to sell its Produce to Debtor's customer.  As Produce Pay's consignment agent, Debtor invoiced its third party buyers for Debtor's sale of Produce Pay's Produce to said parties.  Thereafter, Debtor accounted to Produce Pay by uploading routine Pallet Shipment Reports to Produce Pay's Platform identifying who purchased Produce Pay's Produce and for how much.  All of Debtor's Pallet Shipment Reports directly correspond to the Produce identified on Produce Pay's Conformation of Sale to Debtor containing Produce Pay's PACA trust preservation language.  *See* Exhibit B.

To be clear, Produce Pay originally purchased Produce from Debtor upon Debtor's documents, warranties, and representations.  Based on the foregoing, Produce Pay paid Debtor an agreed price to purchase the Produce itself and all of the Debtor's right, title, and interest in and to the same.  Produce Pay's payment of good funds to Debtor concluded this transaction.

Thereafter, Produce Pay issued to Debtor a Confirmation of Sale that identified the Produce it purchased from Debtor, the price it already paid Debtor, and it included Produce Pay's PACA trust preservation language.  Each of the Confirmations of Sale identified the Produce that Produce Pay placed with Debtor to sell to its customers as consignment agent for Produce Pay.  Based on the information in the Confirmation of Sale, Debtor would sell Produce Pay's identified Produce to third parties on Produce Pay's behalf and account to Produce Pay for each sale.  Because Debtor sold Produce Pay's Produce to third parties as consignment agent for

MEMORANDUM OF POINTS AND
AUTHORITIES

Page 13 of 22

WALLACE JORDAN RATLIFF & BRANDT LLC
JASON R. KLINOWSKI, ESQ.
800 SHADES CREEK PARKWAY, SUITE 400
BIRMINGHAM, ALABAMA 35209
TEL: (205) 874-0371 · FAX: (205) 874-3287

Produce Pay, Debtor possessed nothing more than a mere right to possess Produce Pay's Produce and was not the holder of either legal or equitable title.  All rights, title, and interests remained with Produce Pay until passed to the ultimate buyer.  Generally, in a consignment transaction, the consignor retains title to the produce until the consignee makes a sale. *Tex-Sun Produce*, 48 Agric. Dec. 1111, 1114 (U.S.D.A. Sept. 18, 1989).   In light of the foregoing, Plaintiff has satisfied its burden under Section 363(p) to establish a superior claim to the Debtor's PACA trust assets.

## IV.    DEBTOR SHOULD BE COMPELLED TO CREATE AND FULLY FUND A SEGREGATED PACA TRUST ACCOUNT FOR THE BENEFIT OF ALL PACA TRUST CREDITORS, INCLUDING PRODUCE PAY

As noted above, PACA's trust provisions were created in order to eliminate the "burden on commerce" resulting from the fact that commercial lenders routinely achieved priority in bankruptcy over the sellers of produce.  *See* 7 U.S.C.A. § 499e(c)(1).  It is unambiguously clear from the legislative history that Congress believed that the interests of such sellers would be adequately protected by the imposition of a *non*segregated floating trust on such produce and any of its proceeds.  H.R.Rep. No. 543, 98th Cong., 2d Sess. 3–4, *reprinted* in 1984 U.S.Code Cong. & Admin.News 405, 409 (House Report) ("The trust impressed by section 5(c)(2) is a nonsegregated 'floating trust' made up of all a firm's commodity related liquid assets . . ."); *see also JSG Trading Corp. v. Tray Wrap*, 917 F.2d 75, 78 (1990) ("[E]ven a cursory review of the Perishable Commodity Act's history reveals that the segregation of trust fund assets was not one of Congress' purposes . . .").  Congress believed that this form of trust would effectively protect produce sellers without unduly burdening or disrupting the operations of the other parties to such transactions.  House Report at 407 ("The trust impression by section 5(C)(2) of this act is made up a firm's commodity related liquid assets, and is a nonsegregated 'floating trust', which

Wallace Jordan Ratliff & Brandt LLC
Jason R. Klinowski, Esq.
800 Shades Creek Parkway, Suite 400
Birmingham, Alabama 35209
Tel: (205) 874-0371  ·Fax: (205) 874-3287

permits the commingling of trust assets.  In the view of the committee it provides the protection

needed by the trust beneficiaries without creating an undue hardship to any person."

Accordingly, where produce dealers petition a court to have their trust interest secured

beyond the extent provided by PACA through the creation of a *segregated* account, they bear the

burden of showing that they are not being adequately protected under the routine operation of the

trust.  *See Frio Ice, S.A. v. Sunfruit, Inc.*, 918 F.2d 154, 159 n.8 (11th Cir. 1990) ("By requiring

trust beneficiaries to show the actual dissipation or the threat of dissipation of the PACA trust

before ordering segregation, district courts will avoid unduly burdening those produce

beneficiaries who have properly maintained the trust.").   "PACA does not anticipate segregation

of trust assets without an express showing that the trust assets are being dissipated or are

threatened with dissipation."  *In re McCue*, 324 B.R. 389, 392 (Bankr. M.D. Fla. 2005).

### A.  Michigan Law Requires Segregation of Debtor's PACA Trust Assets

Under Michigan law, "[u]pon acceptance of a trusteeship, the trustee shall administer the

trust in good faith, expeditiously, in accordance with its terms and purposes, for the benefit of the

trust beneficiaries, and in accordance with this article."  M.C.L.A. 700.7801.  On or about March

30, 2007, Debtor accepted its role as the corporate trustee of the PACA trust when the United

States Department of Agriculture ("*USDA*") granted its application for a license to buy and sell

wholesale quantities of perishable agricultural commodities ("*Produce*") pursuant to PACA.  A

true and correct copy of Debtor's PACA license is attached hereto as <u>Exhibit C</u>.  Thereafter,

Debtor possessed a duty of loyalty under Michigan law that required Debtor to "administer the

trust solely in the interests of the trust beneficiaries."  M.C.L.A. 700.7802(1).  To this end,

Debtor, as the corporate trustee of the PACA trust and a PACA licensed dealer, is "required to

maintain trust assets in a manner that such assets are freely available to satisfy outstanding

obligations to sellers of perishable agricultural commodities.  Any act or omission which is

MEMORANDUM OF POINTS AND
AUTHORITIES

Page 15 of 22

WALLACE JORDAN RATLIFF & BRANDT LLC
JASON R. KLINOWSKI, ESQ.
800 SHADES CREEK PARKWAY, SUITE 400
BIRMINGHAM, ALABAMA 35209
TEL: (205) 874-0371  · FAX: (205) 874-3287

inconsistent with this responsibility, including dissipation of trust assets, is unlawful and in violation of section to of the Act (7 U.S.C. 499b)." 7 C.F.R. § 46.46(d)(1). Further, it shall be unlawful for any … dealer, such as the Debtor herein, "to fail to maintain the trust as required under section 499e(c)." 7 U. S. C. § 499b(4). Specifically, the "perishable agricultural commodities received by [Debtor] in all transactions, and all inventories of food or other products derived from perishable agricultural commodities, and any receivables or proceeds from the sale of such commodities or products, shall be held by [Debtor] in trust for the benefit of all unpaid suppliers or sellers of such commodities or agents involved in the transaction until full payment of the sums owing in connection with such transactions has been received by such unpaid suppliers, sellers, or agents." 7 U. S. C. § 499e(c)(2).

Consistent with the foregoing, under Michigan law "[a] trustee shall take reasonable steps to take control of and protect the trust property." and "[a] trustee shall keep trust property separate from the trustee's own property." M.C.L.A. 700.7810 to 700.7811(1). In light of the above, it is clear that Michigan law not only favors segregation of trust assets, but requires the same.

### B. Segregation of Debtor's PACA Trust Assets is Warranted Because of Debtor's Actual and Threatened Dissipation of its PACA Trust Assets

The Debtor's creation and funding of a segregated PACA trust fund is required under Michigan law and appropriate under PACA when trust assets are either being dissipated or threatened with dissipation. *Supra. See e.g. Hiller Cranberry Prods. v. Koplovsky*, 165 F.3d 1 (1st Cir. 1999) (ruling that use of PACA trust assets for purposes other than payment of PACA creditors, without keeping an adequate reserve for payment, constitutes an unlawful dissipation of trust assets).

WALLACE JORDAN RATLIFF & BRANDT LLC
JASON R. KLINOWSKI, ESQ.
800 SHADES CREEK PARKWAY, SUITE 400
BIRMINGHAM, ALABAMA 35209
TEL: (205) 874-0371 · FAX: (205) 874-3287

In this case, several examples of actual or threatened dissipation exist that warrant segregation.  First, Debtor's Motions disclose the fact that the Debtor is in fact balance sheet insolvent.

(i)    *Debtor's Insolvency Creates Threat of Continued Dissipation of PACA Trust*

Specifically, Chemical Bank is owed not less than $4,954,123.00 and is secured by a mortgage on certain undisclosed[3] real property owned by Robin L. Spiech and Steven M. Spiech with an alleged value of $4,725,000.00, which leaves Chemical Bank under secured or exposed in the amount of not less than $229,123.00.  Chemical Bank is also the beneficiary of a life insurance policy that on Steven M. Spiech that holds no real value and confers no benefit to Chemical Bank unless and until Mr. Spiech passes.  Leaf Capital Funding LLC provided the Debtor with financing on specific equipment and is owed not less than $153,000.00.  CHS Capital LLC is owed not less than $173,000.00 for unpaid fertilizer.  Monte Packaging, Inc. is owed no less than $225,000.00 for unpaid packaging materials supplied to Debtor, but footnote 3 to the Motions state that "the promissory note giving rise to the security interest has been paid in full and pursuant to the parties agreement the security interest has been terminated."  *See* Motion at FN3.  The Debtor also identifies not less than $119,657.04 of potential PACA claims.  Importantly, this number cannot possibly be accurate because the Debtor's Top 20 Creditors List [D.E. #3 at pgs. 5-7] includes at least nine potential unpaid Produce sellers not identified in the Motions as potential PACA creditors.

Lastly, Debtor admits owing Produce Pay $460,927.98 and states that "Produce Pay claims to be the owner of inventory of the Debtor."  Motion at ¶ 22.  The foregoing is grossly

---

[3] The Motion makes no reference to whether the real property consists of commercial property used by Speich Farms, the residential property of Robin and Steven Spiech, or other information necessary to assess the alleged secured positon of Chemical Bank.

**Page 17 of 22**

WALLACE JORDAN RATLIFF & BRANDT LLC
JASON R. KLINOWSKI, ESQ.
800 SHADES CREEK PARKWAY, SUITE 400
BIRMINGHAM, ALABAMA 35209
TEL: (205) 874-0371 · FAX: (205) 874-3287

inaccurate for at least two reasons.  First, Produce Pay is the holder of a property perfected PACA trust claim against Debtor for in excess of $1,000,000.00.  Second, Debtor sold Produce to Produce Pay for which it was paid in full and, thereafter, Produce Pay utilized Debtor as a consignment agent to sell its Produce to Debtor's customers.  As such, Debtor sold not less than $1,000,000 of Produce Pay's Produce to third parties such as Kroger and others, created accounts receivable to its customers for its sale of Produce Pay's Produce, collected the proceeds of Debtor's sale of Produce Pay's Produce, and failed to remit any of the proceeds it collected to Produce Pay.

Taking the Debtor's Motions as true (i.e., it owes Monte Packaging $0.00, it only owes Produce Pay $460,000, and only has $119,000 of PACA debt), the Debtor admittedly owes not less than $5,860,707.98 to just its secured creditors alone (i.e., ignoring all other creditor claims and admin fees) and only has $4,261,469.43 of assets, which leaves a shortfall of about $1,600,000.  As discussed above, Courts interpreting PACA indicate that **insolvency is where a person's liabilities exceed his assets**.  *See, e.g.*, *Skyline Potato Co., Inc. v. Hi-Land Potato Co., Inc.*, 188 F. Supp. 3d 1097, 1118 (D. N.M. 2016) (emphasis added).  Because the Debtor is in fact insolvent, its request to use cash collateral to continue its operations is nothing more than a veiled request for this Honorable Court's permission to continue dissipating PACA trust assets and to continue operating in violation of both PACA and Michigan law.

      *(ii)*    *Debtor Failed to Submit Evidence of a Need to Use Cash Collateral and Failed to Satisfy its Burden Under § 363(p)*

As noted above, in a cash collateral hearing the Debtor possesses the burden of proof burden of proof on the issue of adequate protection.  *In Re: Cherry Growers, Inc.*, 2017 WL 4990443 *4 (W.D. Mich. 2017).(citing 11 U.S.C. § 363(p)).  To satisfy the Debtor's aforementioned burden of persuasion, Debtor must show that its request to use cash collateral is

Page 18 of 22

WALLACE JORDAN RATLIFF & BRANDT LLC
JASON R. KLINOWSKI, ESQ.
800 SHADES CREEK PARKWAY, SUITE 400
BIRMINGHAM, ALABAMA 35209
TEL: (205) 874-0371 · FAX: (205) 874-3287

consistent with its: (i) duty of loyalty under Michigan law to administer the trust solely in the interests of the trust beneficiaries; (ii) legal obligation to maintain trust assets in a manner that such assets are freely available to satisfy outstanding obligations to sellers of perishable agricultural commodities and to refrain from any act or omission which is inconsistent with this responsibility; and (iii) legal obligation to maintain the trust as required under section 499e(c). Simply put, Debtor cannot simply request to pay legitimate business expenses while its PACA trust creditors remain unpaid without an affirmative showing that such unlawful use of trust assets will not result in its PACA trust assets becoming less freely available. Absent such an evidentiary showing by the Debtor, the Motions itself are nothing more than a request for permission to dissipate trust assets and should be denied.

In this case, Debtor failed to provide any evidence in support of its alleged need to pay expenses or how such payment will result in Produce Pay or any other potential PACA creditor being paid in full. Because PACA makes even the payment of legitimate business expenses illegal, the Court should deny Debtor's request to use cash collateral and enjoin Debtor from dissipating trust assets unless and until a segregated PACA trust account is established and fully funded to provide adequate assurance of full payment to Debtor's PACA trust creditors, such as Produce Pay.

Importantly, Debtor cannot show a need to pay a vast majority of the expenses requested in its Motions and, indeed, did not even make an attempt to support its Motions with any level of detail or real evidence. Further, Debtor failed to provide evidence that payment of the expenses identified in its Exhibit 1 [D.E. 3 6 at pg 15] would make Debtor's PACA trust assets more freely available or result in payments to Debtor's PACA trust creditors, such as Produce Pay herein. To the contrary, all of the expenses identified in Debtor's Exhibit 1 are the exact types of

MEMORANDUM OF POINTS AND AUTHORITIES

Page 19 of 22

WALLACE JORDAN RATLIFF & BRANDT LLC
JASON R. KLINOWSKI, ESQ.
800 SHADES CREEK PARKWAY, SUITE 400
BIRMINGHAM, ALABAMA 35209
TEL: (205) 874-0371 · FAX: (205) 874-3287

expenses other courts have held to violate PACA and constitute a breach of the trustee's fiduciary duties to its unpaid PACA trust beneficiaries. As noted above, "use of the trust assets for any purpose other than paying the produce seller, including the payment of legitimate business expenses, is a violation under PACA." *Collins Brothers v. Perrine*, 2006 Bankr. LEXIS 2516 *14-15 (Bankr. N.D. Ga. Aug. 8, 2006). As such, Debtor's Motions is *per se* inappropriate and should be denied.

The Debtor could have submitted evidence of its continued operation and related profitability in support of their Motions. They did not and the Declaration of Timothy M. Spiech in support of the Motions is basically silent on this issue. Debtor could have submitted evidence of a need to make ordinary course payments to a secured lender in order to maintain a line of credit that benefits all creditors. They did not. Debtor could have submitted evidence that its payroll had been reduced to only critical employees. They did not. Rather, Debtor requested permission to, *inter alia*, make payroll, insurance and utilities payments in states like Georgia. Why? Debtor is located in Michigan and there are no other affiliated or jointly administered debtors identified that might be located in Georgia. Importantly, the Debtor has yet to submit its schedules, but Debtor's Motion and related Declaration of Timothy M. Spiech offers no explanation for such expenses. Debtor could have submitted evidence of electric bills that needed to be paid to keep coolers running to prevent spoilage of perishable commodities currently in inventory. They did not. Simply put, Debtor's Motion is wholly devoid of any evidence of need and it fails to address how the use of cash collateral will make the Debtor's admittedly deficit PACA trust assets more readily available. As such, Debtor's Motion is due to be denied. Consistent with Michigan law and PACA, Debtor should be compelled to create a

segregated account and fully fund its PACA trust obligations in order to provide adequate assurances to its PACA creditors that their trust claims will be paid in full.

Lastly, the Debtor's admittedly failed to pay Produce Pay's unpaid Produce transactions because it made payments to Chemical Bank, which is the exact harm PACA's trust provisions were designed to prevent. *See* E-mail from Eva Stone of Debtor to Ben Dusastre of Produce Pay attached hereto as <u>Exhibit D</u>. This e-mail constitutes direct evidence of actual dissipation warranting segregation. As such, Debtor's proposed assurances are far from adequate and its Motions are due to be denied unless and until the Debtor segregates and fully funds its PACA trust obligations.

For the foregoing reasons, the Plaintiff respectfully requests this Honorable Court to deny Debtor's Motion, direct the Debtor to establish and fully fund a segregated PACA trust fund for the benefit of all its unpaid Produce suppliers, and direct the Debtor to provide appropriate evidentiary support for its Motions.


Dated: November 28, 2017                    PRODUCE PAY, INC.


                                            /s/ Jason R. Klinowski, Esq.

                                            Jason R. Klinowski, Esq.
                                            WALLACE JORDAN RATLIFF
                                            & BRANDT LLC
                                            800 Shades Creek Parkway, Suite 300
                                            Birmingham, Alabama 35209
                                            Telephone:  (205) 874-0371
                                            Facsimile:  (205) 874-3287
                                            E-mail:   jklinowski@wallacejordan.com
                                            *Counsel for Produce Pay, Inc.*

WALLACE JORDAN RATLIFF & BRANDT LLC
JASON R. KLINOWSKI, ESQ.
800 SHADES CREEK PARKWAY, SUITE 400
BIRMINGHAM, ALABAMA 35209
TEL: (205) 874-0371 · FAX: (205) 874-3287

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the forgoing, along with all exhibits thereto, if any, was filed and served upon all counsel of record properly registered with the Court's CM/ECF system, this 28th day of November 2017.

Respectfully submitted,

/s/ Jason R. Klinowski
Jason R. Klinowski, Esq.
WALLACE JORDAN RATLIFF
& BRANDT LLC
First Commercial Bank Building
800 Shades Creek Parkway, Suite 300
Birmingham, Alabama 35209
Telephone: (205) 874-0371
Fax: (205) 874-3287
E-mail: jklinowski@wallacejordan.com
Lead Counsel for Produce Pay, Inc.

MEMORANDUM OF POINTS AND
AUTHORITIES                     Page 22 of 22     WALLACE JORDAN RATLIFF & BRANDT LLC
JASON R. KLINOWSKI, ESQ.
800 SHADES CREEK PARKWAY, SUITE 400
BIRMINGHAM, ALABAMA 35209
TEL: (205) 874-0371 · FAX: (205) 874-3287