UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF MICHIGAN

In re:                                                  Case No. GK 17-05398-jtg

SPIECH FARMS, LLC,                                      Chapter 7

                        Debtor.                         Hon. John T. Gregg

_____/

**OPINION REGARDING MOTION TO ENFORCE
AUTOMATIC STAY AND FOR RELATED RELIEF**

APPEARANCES:  Cody H. Knight, Esq., RAYMAN & KNIGHT, Kalamazoo, Michigan for Spiech Farms, LLC; Elisabeth M. Von Eitzen, Esq., Robert H. Skilton, III, Esq. and Stephen B. Grow, Esq., WARNER NORCROSS & JUDD, LLP, Grand Rapids, Michigan for Laura J. Genovich, Chapter 7 Trustee; Jason R. Klinowski, Esq. and Katie E. Willoughby, Esq., WALLACE JORDAN RATLIFF & BRANDT, LLC, Birmingham, Alabama for Produce Pay, Inc., BW Orchards, LLC, C & D Fuehring Farms, Inc., Golden Hart Fruit Farms, LLC, Green Ventures, LLC, Herrygers Farms, LLC, James Jensen d/b/a Jensen Farms, Lakeshore Farms, Inc., LK VanSickle Farms, LLC, Malburg Acres, LLC, Randy A. Fedo d/b/a Ran-Mark Company, Paul Oomen d/b/a Paul Oomen & Sons, Slocum Farms, LLC, and Villadsen Tree Farms, Inc.

Laura J. Genovich, the chapter 7 trustee (the "Trustee") for the estate of Spiech Farms, LLC (the "Debtor"), alleges that Produce Pay, Inc. ("Produce Pay") and thirteen other creditors (the "Growers", and together with Produce Pay, the "Plaintiffs")[1] violated the automatic stay when they asserted claims that are property of the Debtor's estate in the United States District Court for the Southern District of Georgia.  The Trustee also contends that the Plaintiffs collaterally attacked at least one order of this court when they raised issues in the Southern District of Georgia that were previously adjudicated by this court.  Accordingly, the Trustee requests that the Plaintiffs be found in contempt of court and sanctioned.

---

[1]    The Growers are BW Orchards, LLC, C & D Fuehring Farms, Inc., Golden Hart Fruit Farms, LLC, Green Ventures, LLC, Herrygers Farms, LLC, James Jensen d/b/a Jensen Farms, Lakeshore Farms, Inc., LK VanSickle Farms, LLC, Malburg Acres, LLC, Randy A. Fedo d/b/a Ran-Mark Company, Paul Oomen d/b/a Paul Oomen & Sons, Slocum Farms, LLC, and Villadsen Tree Farms, Inc.

The Plaintiffs deny that any violation of the automatic stay occurred because they have neither named the Debtor as a defendant nor asserted claims that constitute property of the Debtor's estate. The Plaintiffs further maintain that they are not collaterally attacking an order of this court because the claims and issues in the Southern District of Georgia are completely different from those previously decided by this court. As such, the Plaintiffs argue no basis exists upon which to hold them in contempt.

For the following reasons, the court shall grant the motion in part and deny the motion in part.

## JURISDICTION

The court has jurisdiction pursuant to 28 U.S.C. § 1334(a) and (e). This is a core proceeding under 28 U.S.C. § 157(b)(2)(A) and (O). *See Amedisys, Inc. v. Nat'l Century Fin. Enter., Inc. (In re Nat'l Century Fin. Enter., Inc.)*, 423 F.3d 567, 573-74 (6th Cir. 2005) (citations omitted) (motion to enforce automatic stay is core proceeding); *Mountain Am. Credit Union v. Skinner (In re Skinner)*, 917 F.2d 444, 448 (10th Cir. 1990) (enforcement of order from core proceeding is itself core proceeding); *New Prods. Corp. v. Dickinson Wright PLLC (In re Modern Plastics Corp.)*, 577 B.R. 690, 702 (W.D. Mich. 2017) (citations omitted) (civil contempt claim arising out of core proceeding is itself core proceeding).

## BACKGROUND[2]

The Debtor is a Michigan limited liability company. Together, Timothy M. Spiech, Robin L. Spiech, Bradley A. Spiech and Steven Spiech (collectively, the "Spieches") own 100% of the

---

[2] The pertinent facts are taken from the court's docket, the pleadings filed in this case, the pleadings filed in the Southern District of Georgia, and the representations made during the hearing in this case.

membership interests of the Debtor.   The Debtor, in turn, owns 100% of the membership interests of Spiech Farms Georgia, LLC ("Spiech Georgia"), a Georgia limited liability company.

Prepetition, the Debtor grew, purchased and sold blueberries, grapes and asparagus. Unable to satisfy the debts it owed to the Growers, Produce Pay, and its other creditors, the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code on November 22, 2017.[3]  Spiech Georgia did not file for bankruptcy at that time, however.

From the beginning, nearly every aspect of the Debtor's case was disputed.  At the forefront of these disputes was Produce Pay's contention that it was a beneficiary of a trust under the Perishable Agricultural Commodities Act, 7 U.S.C. § 499 *et seq.* ("PACA").  This court ultimately determined that because Produce Pay did not buy, sell and/or supply produce or otherwise succeed to the Debtor's rights in produce, it was not a PACA trust beneficiary.  *In re Spiech Farms, LLC*, 592 B.R. 152 (Bankr. W.D. Mich. 2018).[4]  The Growers, too, claimed that they were beneficiaries of a PACA trust.  When the Growers did not timely respond to the Debtor's objections, the court determined they were not PACA trust beneficiaries  [Dkt. Nos. 220, 426, 428, 429, 431, 433, 434, 435, 436, 442, 443, 444, 445, 447].

Unsatisfied with their remaining claims against the Debtor's estate, the Plaintiffs filed a seventeen-count complaint, as amended (the "Complaint"), against the Spieches, Eva M. Stone ("Stone", and together with the Spieches, the "Principals"), and Spiech Georgia in the Southern

---

[3]     The Bankruptcy Code is set forth in 11 U.S.C. § 101 *et seq.*  Specific sections of the Bankruptcy Code are referred to as "section ___."  Citations to "[Dkt. No. ___]" are to entries on the docket in this case.

[4]     Produce Pay has appealed this court's decision to the United States District Court for the Western District of Michigan.  *Produce Pay, Inc. v. Spiech Farms, LLC*, Case No. 1:18-cv-01366 (W.D. Mich.).

3

District of Georgia on January 9, 2019. *BW Orchards, LLC et al. v. Spiech Farms Georgia, LLC et al.*, Case No. 2:19-cv-00007 (S.D. Ga.).[5]  The Complaint contains the following causes of action:

- Failure to Promptly Pay under PACA against the Principals;
- False or Misleading Statements under PACA against the Principals;
- Breach of Good Faith and Fair Dealing under PACA against the Principals;
- Breach of Express or Implied Duties under PACA against the Principals;
- Conspiracy to Defraud against Spiech Georgia and the Principals;
- Fraud against the Principals;
- Breach of Duty to Corporate Creditors against the Principals;
- Intentional Interference with Contract against the Principals;
- Conversion against Spiech Georgia and the Principals;
- Unjust Enrichment against Spiech Georgia and the Principals;
- Negligence against Spiech Georgia and the Principals;
- Common Enterprise Liability against Spiech Georgia;
- Piercing the Veil/Alter Ego against Tim Spiech;
- Piercing the Veil/Alter Ego against Robin Spiech;
- Piercing the Veil/Alter Ego against Steve Spiech;
- Piercing the Veil/Alter Ego against Bradley Spiech; and
- Piercing the Veil/Alter Ego against Eva. M. Stone.

For each cause of action, the Plaintiffs seek damages in the same amounts sought against the Debtor in this case. (*See, e.g.*, Hr'g Tr. at 36: 6-23).

After the Complaint was filed, Spiech Georgia filed a voluntary petition for relief under chapter 7 with this court on February 22, 2019. *In re Spiech Farms Georgia, LLC*, Case No. 19-00661 (Bankr. W.D. Mich.).[6]  To date, the Debtor's estate and the Spiech Georgia estate have not been substantively consolidated.

The Debtor filed its motion to enforce the automatic stay and for related relief [Dkt. No. 611] (the "Motion") on March 11, 2019.  Shortly thereafter, the Debtor's case was converted to

---

[5]     On June 26, 2019, the Southern District of Georgia transferred the Plaintiffs' action to the Western District of Michigan. *BW Orchards, LLC v. Spiech Farms Georgia, LLC*, 2019 WL 2635541 (S.D. Ga. June 26, 2019).  For ease of reading, references will continue to be made to the Southern District of Georgia.

[6]     Any claims against Spiech Georgia in the Southern District of Georgia should be stayed by virtue of Spiech Georgia's bankruptcy filing.  The court will not make a determination in this case regarding any violation of the automatic stay in Spiech Georgia's case.

chapter 7 and the Trustee was appointed [Dkt. Nos. 623, 625].[7]  After briefing was completed [Dkt.

Nos. 632, 636], the court held a hearing and took the matter under advisement.[8]

## DISCUSSION

This dispute requires the court to consider the following issues:  (i) whether the Plaintiffs

violated section 362(a)(3) by asserting causes of action in the Southern District of Georgia that

constitute property of the Debtor's estate; (ii) whether the Plaintiffs have collaterally attacked this

court's decision denying Produce Pay the status of a PACA trust beneficiary; and (iii) whether the

Plaintiffs should be held in contempt and sanctioned under section 105(a).[9]

A.      *Violation of the Automatic Stay Under 11 U.S.C. § 362(a)(3)*

In the Motion, the Trustee contends the Plaintiffs have violated the automatic stay by

asserting causes of action that are in reality nothing more than claims for fraudulent transfers and

breach of fiduciary duties that should be liquidated for the benefit of all creditors of the estate.  The

Trustee further argues that even if some of the Plaintiffs' causes of action could be construed as

personal, the Plaintiffs' recovery would directly interfere with the estate's recovery.

The Plaintiffs generally disagree.  The Plaintiffs argue that because they did not name the

Debtor as a defendant, they have not violated the automatic stay.  Furthermore, the Plaintiffs

summarily state that because they "are seeking money damages from non-debtors for harm done

to them by the non-debtors in breach of the duties that the non-debtors owed to the [Plaintiffs],"

---

[7]       Prior to the conversion of this case, the Debtor was acting as a debtor in possession.  *See* 11 U.S.C. § 1107.
Upon conversion, the Trustee succeeded to the Motion.  *See* 11 U.S.C. § 323; Fed. R. Bankr. P. 6009.  For ease of
reading, the court shall hereinafter refer to the Motion as if it were filed by the Trustee.

[8]       After the close of business on the day before the hearing, the Plaintiffs filed an unauthorized sur-reply [Dkt.
No. 640].  With leave from the court, the Trustee responded to the sur-reply after the hearing [Dkt. No. 649].

[9]       The Plaintiffs also sought sanctions against Debtor's counsel under 28 U.S.C. § 1927 for filing an allegedly
frivolous Motion.  In light of the court's findings herein, the Motion is not frivolous.  The court shall therefore deny
the Plaintiffs' request for sanctions.

they are not interfering with property of the Debtor's estate.  (Resp. at ¶ 9).  Finally, the Plaintiffs contend that the Trustee lacks standing to pursue piercing the veil/alter ego claims against the Principals.

As an initial matter, the Plaintiffs are mistaken when they argue that no violation of the automatic stay occurred because the Debtor was not named as a defendant.  The Plaintiffs are correct in that the automatic stay does not extend to non-debtors absent the issuance of an injunction under section 105(a).  *See Parry v. Mohawk Motors of Mich., Inc.*, 236 F.3d 299, 314-15 (6th Cir. 2000); *Patton v. Bearden*, 8 F.3d 343, 349 (6th Cir. 1993).  However, unlike section 362(a)(1), which prohibits acts "against the debtor," section 362(a)(3) addresses acts "to exercise control over property of the estate," including causes of action.  11 U.S.C. § 362(a)(3); *In re Nat'l Century Fin. Enter., Inc.*, 423 F.3d at 577-78 (citation omitted).  It therefore does not matter whether the Debtor is named as a defendant for purposes of section 362(a)(3).  *See id*. at 578.

Whether specific causes of action are property of the estate is a more difficult issue.  Upon the filing of any bankruptcy case, an estate is created by operation of law.  11 U.S.C. § 541(a).  Subject to certain exceptions, section 541 provides that the bankruptcy estate is comprised of all legal or equitable interests of the debtor in property as of the commencement of the case.  11 U.S.C. § 541(a)(1); *see, e.g.*, *Tyler v. DH Capital Mgmt, Inc.*, 736 F.3d 455, 462 (6th Cir. 2013) (citations omitted) (debtor's prepetition causes of action constitute property of the estate).  Any "actions taken in violation of the stay are invalid and voidable and shall be voided absent limited equitable circumstances."  *Easley v. Pettibone Mich. Corp.*, 990 F.2d 905, 911 (6th Cir. 1993).

The trustee of a bankruptcy estate has the exclusive right to assert a debtor's prepetition causes of action.  *Honigman v. Comerica Bank (In re Van Dresser Corp.)*, 128 F.3d 945, 947 (6th Cir. 1997).  However, "'if . . . a cause of action belongs *solely* to the estate's creditors, then the

6

trustee has no standing to bring the cause of action.'" *Id.* (emphasis in original) (quotation omitted); *see also Caplin v. Marine Midland Grace Tr. Co.*, 406 U.S. 416, 434 (1972) (trustee had no standing under Bankruptcy Act to assert claims belonging to creditor).[10]  Whether a creditor has the *sole* right to bring a cause of action is determined by applicable non-bankruptcy law.  *See In re Van Dresser Corp.*, 128 F.3d at 947 (citation omitted).  Notwithstanding the foregoing, "[i]f either's recovery can 'preclude[ ] the other from a subsequent recovery, then the claims are not truly independent'" and by default belong to the estate.  *Lowe v. Bowers (In re Nicole Gas Prod., Ltd.)*, 916 F.3d 566, 573 (6th Cir. 2019), *petition for cert. filed*, No. 18-1489 (U.S. May 29, 2019) (quoting *In re Van Dresser Corp.*, 128 F.3d at 947-48).

In addition to a debtor's prepetition causes of action under applicable non-bankruptcy law, a trustee has the exclusive right to assert causes of action that arise under the Bankruptcy Code, including chapter 5 avoidance actions.  *See, e.g.*, *Brennan v. Sloan (In re Fisher)*, 296 Fed. Appx. 494, 504 (6th Cir. 2008) (citation omitted).  Any proceeds or other interests in property that the trustee recovers constitute property of the estate.  11 U.S.C. § 541(a)(3), (6); *see In re Fisher*, 296 Fed. Appx. at 505.

In order to determine if the Plaintiffs' causes of action are property of the estate, the court is required to analyze the facts alleged in the Complaint in relation to applicable non-bankruptcy law.  *See In re Nicole Gas Prod., Ltd.*, 916 F.3d at 573; *In re Van Dresser Corp.*, 128 F.3d at 947.  Unfortunately, the Complaint and the Plaintiffs' briefs are confusing on a number of levels, making

---

[10]     When determining if causes of action are property of the estate, some courts refer to "personal" and "general" causes of action, others refer to the causes of action as "direct" or "derivative," and still others focus on whether the injury is "direct" or "secondary."  *Meridian Capital CIS Fund v. Burton (In re Buccaneer Res., L.L.C.)*, 912 F.3d 291, 294 n.1 (5th Cir. 2019).  Regardless of any differences in terminology, the inquiry is generally the same.  *Id*.

it nearly impossible for the court and the Trustee to thoroughly assess each of the Plaintiffs' causes of action.[11]

First, the Complaint fails to identify which state's law applies to the eight causes of action sounding in tort. The Plaintiffs' briefing only adds to the uncertainty. In their response brief, the Plaintiffs represent that *all* of their state law claims are brought under Georgia law, without providing any analysis as to why each cause of action is personal to them. (Resp. at ¶ 6). However, in their sur-reply, the Plaintiffs suggest that Michigan law applies to at least one of their claims, thereby directly contradicting their previous representation that Georgia law applies to all claims. (Sur-Reply at ¶ 2). Only at the hearing did the Plaintiffs definitively state that their tort causes of action are brought pursuant to Georgia law. (*See, e.g.*, Hr'g Tr. at 25: 4-10).

Second, the Complaint identifies each individual Spiech as a manager, member, or officer of *both* Spiech Michigan and Spiech Georgia, despite the fact that the Complaint expressly states that Spiech Georgia is a wholly-owned subsidiary of the Debtor. (Compl. at ¶ 21; Compl. at Ex. E). In addition, the Spieches and Stone are collectively defined as the "Principals" of *both* the Debtor and Spiech Georgia. (Compl. at ¶ 21(g)). Throughout the Complaint, the term "Principals" is used to refer to the Spieches and Stone without identifying the specific role or capacity in which each Principal was acting with respect to each cause of action.[12]

Third, the Complaint's five counts for piercing the veil/alter ego, much like the counts for the tort causes of action, fail to identify whether Georgia law, Michigan law, or some other state's law applies. The Plaintiffs' briefing is again inconsistent. In their sur-reply, the Plaintiffs confusingly cite to decisions relying on Michigan law, despite having stated that Georgia law

---

[11]     This point cannot be overstated and serves as the underlying theme of the Opinion.

[12]     (*See, e.g.*, Compl. at ¶¶ 32, 41, 42, 43, 89, 108, 113, 123, 129, 149, 171, 188, 198, 237, 257, 274, 312, 351, 374, 394, 411, 445, 464).

applies to all causes of action in their response.  (*Compare* Resp. at ¶ 6 *with* Sur-Reply at ¶ 2).  The confusion is compounded by the Plaintiffs' failure to identify whether they are seeking to pierce the veil of the Debtor, Spiech Georgia, or both.  The Plaintiffs repeatedly conflate the two entities without definitively stating whose veil is being pierced.  (*See, e.g.*, Compl. at ¶¶ 453, 454, 458, 459, 461, 463, 464, 465, 467, 468; *see also* Resp. at ¶ 11; Sur-Reply at ¶ 3).

Prior to the hearing, the court assumed that perhaps the Plaintiffs were seeking to pierce the veil of the Debtor to impose liability on the Spieches as members of the Debtor.  Alternatively, the court speculated that the Plaintiffs might be seeking to reverse pierce the veil of the Debtor to impose alter ego liability on Spiech Georgia.  The Trustee was also confused.  (Hr'g Tr. at 12: 18-22, 19: 5-11, 51: 5-12).  During the hearing, the Plaintiffs disclosed that they are not seeking to pierce the veil of the Debtor at all.  (*See, e.g.*, Hr'g Tr. at 26: 17-21, 27: 10-15).  Instead, the Plaintiffs repeatedly stated they are only attempting to pierce the veil of Spiech Georgia under Georgia law in order to impose liability on "the Principals."  (*See, e.g.*, Hr'g Tr. at 50: 21-23).

Setting all of this aside, the court has little difficulty concluding under the circumstances that the Plaintiffs violated the automatic stay.

### 1.	*The Trustee Has the Sole Right to Assert the Causes of Action as Pled*

Courts generally recognize that where causes of action are nothing more than disguised claims for fraudulent transfers and breach of fiduciary duties, they belong to the estate.  *See, e.g.*, *Torch Liquidating Tr. v. Stockstill*, 561 F.3d 377, 386 (5th Cir. 2009); *In re Swallen's, Inc.*, 205 B.R. 879, 883-84 (Bankr. S.D. Ohio 1997); *Camofi Master LDC v. U.S. Coal Corp. (In re Licking River Mining, LLC)*, 2016 WL 2764717, at *5 (Bankr. E.D. Ky. May 9, 2016) (citation omitted), *aff'd*, 2017 WL 4478332 (E.D. Ky. Oct. 6, 2017).  The Second Circuit explained this principle as follows:

Indeed, every creditor in bankruptcy has an individual claim (set forth in a proof of claim) against the debtor, whether it be in tort . . ., contract, or otherwise.  But often there are claims against third parties that wrongfully deplete the debtor's assets.  Individual creditors may wish to bring claims against those third parties to seek compensation for harms done to them by the debtor and secondary harms done to them by the third parties in wrongfully diverting assets of the debtor that would be used to pay the claims of the individual creditor.  The fact that an individual creditor may seek to do so does not make those secondary claims particular to the creditor, for it overlooks the obvious: Every creditor has a similar claim for the diversion of assets of the debtor's estate.  Those claims are general – they are not tied to the harm done to the creditor by the debtor, but rather are based on an injury to the debtor's estate that creates a secondary harm to all creditors regardless of the nature of their underlying claim against the debtor.

*Tronox Inc. v. Kerr-McGee Corp. (In re Tronox Inc.)*, 855 F.3d 84, 103-104 (2d Cir. 2017).

As the Trustee stresses, the Complaint is replete with disguised claims for actual and constructive fraudulent transfers and claims for breach of fiduciary duties, all of which are clearly property of the estate.  *See In re Fisher*, 296 Fed. Appx. at 504 (trustee has exclusive right to bring chapter 5 avoidance actions); *Lubin v. Skow (In re Integrity Bancshares, Inc.)*, 382 Fed. Appx. 866, 872 (11th Cir. 2010) (citing *Greenwood v. Greenblatt*, 161 S.E. 135, 139 (Ga. 1931) (claims against officers and directors for losses to corporation as a result of gross negligence, inattention to duties, fraud or mismanagement must be brought by bankruptcy trustee)); *Phoenix Airline Servs., Inc. v. Metro Airlines, Inc.*, 397 S.E.2d 699, 701 (Ga. 1990) (breach of fiduciary duty claims belong to corporation under Georgia law).

In the section entitled "Factual Background" which is incorporated into each count of the Complaint, the Plaintiffs repeatedly allege that the Principals caused the Debtor to make improper transfers to Spiech Georgia:

- Principals used Spiech Michigan as a subterfuge to divert assets into Spiech Georgia, avoid paying debts, and defraud creditors such as Plaintiffs. (Compl. at ¶ 32).

10

- Spiech Georgia's corporate form has been disregarded so as to make it a mere sham or a business conduit for Principals to divert assets away from bankrupt Spiech Michigan. (Compl. at ¶ 36).

- The Principals used Spiech Georgia as a vehicle for protecting themselves from Spiech Michigan's impending financial failure. (Compl. at ¶ 40).

- Instead of using the funds from sales of asparagus to pay Growers, Principals funneled the funds into Spiech Georgia. . . (Compl. at ¶ 41).

- By funneling its assets into Spiech Georgia's blueberry operation, Principals enabled Spiech Michigan to avoid paying its creditors, such as Plaintiffs, and shield assets from Spiech Michigan's bankruptcy. (Compl. at ¶ 43).

Each count in the Complaint is likewise grounded in the Debtor's diversion of assets at the

direction of the Principals to the detriment of all creditors:

- The Principals, as owners, directors, managers, members, and shareholders of Spiech Michigan, failed to cause Spiech Michigan to pay the Plaintiffs. . . (Compl. at ¶ 139).

- Instead of causing Spiech Michigan to uphold its obligations under the Distribution Agreement, Principals used the gross sale proceeds received for Produce Pay's Produce to invest into Spiech Georgia and shield it from Spiech Michigan's impending bankruptcy. (Compl. at ¶ 165).

- Instead of using such proceeds to pay the Growers, Principals utilized the proceeds from the sale of Growers' Produce to invest its resources into Spiech Georgia, siphon assets away from Spiech Michigan to hide them from its creditors, and shield such assets from Spiech Michigan's impending bankruptcy. (Compl. at ¶ 197).

- As officers, directors, or members of Spiech Michigan, the Principals possessed the power necessary to counteract or obviate the decisions of Spiech Michigan not to pay Plaintiffs, to make false or misleading statement to induce Plaintiffs to continue doing business with Spiech Michigan, and to induce Plaintiffs to delay or forego collections efforts for the purpose of funneling assets to Spiech Georgia to shield them from Spiech Michigan's impending bankruptcy. (Compl. at ¶ 229).

- Principals, acting in concert, utilized Spiech Michigan as a conduit to siphon assets to Spiech Georgia. (Compl. at ¶ 263).

- Principals made the false promises to pay for the fraudulent purpose of diverting the proceeds of their sale of the Growers' Produce to third parties

11

away from Spiech Michigan instead of paying the Growers. (Compl. at ¶ 319).

- Because the Principals were either in control or were in a position to control Spiech Michigan, and the Principals failed to safeguard Spiech Michigan's assets, and failed to maintain the assets in a manner in the best interest of the creditors, including the Plaintiffs, the Principals have breached their fiduciary duties as trustees of Spiech Michigan's assets in its insolvency. (Compl. at ¶ 353).

- Contrary to Spiech Michigan's contractual obligation to use the Proceeds of Plaintiffs' Produce to pay the Plaintiffs, Principals diverted the assets collected by Spiech Michigan from its resale of Plaintiffs' Produce to Spiech Georgia for the purpose of hiding such assets and otherwise placing assets outside the reach of its creditors, including Plaintiffs, and to insulate Defendants from Spiech Michigan's impending bankruptcy. (Compl. at ¶ 374).

- On information and belief, under the direction, management, and control of Principals, Spiech Michigan used the funds it received from the Growers, and the funds collected on Produce Pay's behalf, for purposes other than paying Plaintiffs, including investing the money into Spiech Georgia to shield it from Spiech Michigan's bankruptcy creditors and to pay their own salaries. (Compl. at ¶ 392).

- By continuing to convert and/or use the funds rightfully belonging to Plaintiffs for purposes other than paying Plaintiffs, including investment into Spiech Georgia and paying their own salaries, Defendants have been unjustly enriched to Plaintiffs' detriment. (Compl. at ¶ 415).

- Defendants further breached their duties of care to the Growers by negligently, wantonly, and recklessly failing to exercise reasonable care, good faith, and due diligence in endeavoring to sell Growers' Produce at a reasonable price. In fact, Defendants sold Growers' Produce at a price significantly lower than the going rate. (Compl. at ¶ 423).

- Spiech Georgia used the separate corporate identities of Spiech Michigan and Spiech Georgia as a subterfuge to divert assets, avoid paying debts, and defraud creditors such as Plaintiffs. (Compl. at ¶ 444).

- Tim Spiech disregarded Spiech Georgia's corporate form so as to make it a mere sham or business conduit for him and the other Plaintiffs [sic] to siphon assets away from Spiech Michigan to Spiech Georgia and to hide

12

assets from the bankruptcy estate and the creditors of Spiech Michigan, including Plaintiffs.  (Compl. at ¶ 458).[13]

As these paragraphs of the Complaint illustrate, it is hard to view the Plaintiffs' causes of action as anything other than claims for fraudulent transfers and breach of fiduciary duties. *See Nat'l Am. Ins. Co. v. Ruppert Landscaping Co., Inc.*, 187 F.3d 439, 442 (4th Cir. 1999) (the nature of the claims, not their labels, determine if they are property of the estate); *Phoenix Airline Servs., Inc.*, 397 S.E.2d at 701 (same); *accord Church Joint Venture, L.P. v. Blasingame (In re Blasingame)*, 920 F.3d 384, 390-91 (6th Cir. 2019) ("Underlying facts, not legal theories, define causes of action.").

Perhaps recognizing that they cannot overcome the express allegations in their own Complaint, the Plaintiffs chose not to provide any detailed analysis of their tort and PACA causes of action or otherwise substantively respond to the Trustee's arguments.[14]  The Plaintiffs should have explained why those causes of action are personal to them.  *See  In re Buccaneer Res., L.L.C.*, 912 F.3d at 293-94; *In re Emoral, Inc.*, 740 F.3d 875, 880 (3d Cir. 2014).   Instead, the Plaintiffs rely on generalized statements without citing to specific statutory provisions or relevant case law. (Resp. at ¶¶ 7-10; Sur-Reply at ¶¶ 2-3).  Simply put, this is not enough, and the court has no interest in doing the Plaintiffs' work for them. *See ECIMOS, LLC v. Nortek Global HVAC, LLC*, 736 Fed.

---

[13]     The aforementioned examples are by no means exhaustive.  The Complaint contains similar allegations too numerous to count.  (*See, e.g.*, Compl. at ¶¶ 169, 186, 187, 188, 190, 202, 204, 240, 245, 264, 277, 280, 287, 293, 328, 351, 352, 358, 394, 422, 425, 437, 445, 446, 464, 465, 483, 484, 503, 504, 522, 523, 541, 542).  Other than a change in the name of the Principal, all of the piercing the veil/alter ego counts include many of the same allegations.  (*See, e.g.*, Compl. at ¶¶ 458, 477, 496, 516, 535).

[14]     The Complaint is ninety-one pages long, excluding exhibits.  The Plaintiffs' response brief devotes less than four pages to the Trustee's argument that the causes of action are property of the estate.  Two of those pages unpersuasively argue that *National Century* somehow limits the scope of section 362(a)(3) to situations involving specific buckets of money.  *But see In re Nat'l Century Fin. Enter., Inc.*, 423 F.3d at 575-78 (concluding causes of action against third party violated section 362(a)(3)).

Appx. 577, 585 (6th Cir. 2018) (citations omitted).[15]  Based on the allegations in the Complaint, the court concludes that all of the Plaintiffs' tort and PACA causes of action are property of the Debtor's estate.

The only causes of action that the Plaintiffs attempt to address are those for piercing the veil/alter ego.[16]  Corporate veils can generally be pierced upstream to reach parents, shareholders and members (*i.e.*, "traditional piercing"), or downstream to reach subsidiaries or perhaps officers or managing members (*i.e.*, "reverse piercing").  *See Spradlin v. Beads & Steeds Inns, LLC (In re Howland)*, 674 Fed. Appx. 482, 485-86 (6th Cir. 2017).  It is important to keep in mind that the Plaintiffs represented that they are attempting to pierce the veil of Spiech Georgia, not the Debtor, under Georgia law.  *See supra* at pp. 8-9.  The Plaintiffs left unanswered whether they are applying traditional or reverse veil piercing.

If the Plaintiffs are applying traditional piercing, they would be piercing Spiech Georgia's veil to impose liability on its parent and shareholder, the Debtor.[17]  This makes little sense, as the Plaintiffs already hold claims against the Debtor.  Moreover, by doing so, the Plaintiffs would be violating the automatic stay in the Debtor's case.  *See, e.g.*, 11 U.S.C. § 362(a)(6).

---

[15]     Some of the Plaintiffs' causes of action might, in theory, be personal to them.  As pled, however, they are not.  As "masters of the [C]omplaint," the Plaintiffs have only themselves to blame for any shortcomings.  *In re Blasingame*, 920 F.3d at 395.

[16]     Relying on Michigan law for some reason, the Plaintiffs did briefly argue that their claims for intentional interference with contract are personal to them.  (Sur-Reply at ¶ 2).  Courts have found similar claims to be either personal or general, depending on the claim's factual basis in relation to applicable state law.  *Compare, e.g.*, *In re Buccaneer Res., L.L.C.*, 912 F.3d at 295, *with, e.g.*, *CAMOFI Master LDC v. Spradlin*, 2017 WL 4478332, at *4-5 (E.D. Ky. Oct. 6, 2017).  Once again though, the Plaintiffs have not explained how their causes of action are personal to them under Georgia law in order to overcome their countless allegations sounding in fraudulent transfers and breach of fiduciary duties.

[17]     When Spiech Georgia filed for bankruptcy, any claims to pierce its veil became property of its estate.  *See Baillie Lumber Co. v. Thompson*, 612 S.E.2d 299-301 (Ga. 2005); *see also Baillie Lumber Co., LP v. Thompson (In re Icarus Holding, LLC)*, 391 F.3d 1315, 1322 (11th Cir. 2004) (certifying question).

Instead, the Plaintiffs must be attempting to reverse pierce the veil of Spiech Georgia to deem the managing members and perhaps the officers of Spiech Georgia as its alter egos. When the Plaintiffs filed the Complaint, Spiech Georgia was not in bankruptcy, so there was arguably nothing improper in doing so. The Trustee was simply a creditor of Spiech Georgia, much like the Plaintiffs.[18] Indeed, outside of bankruptcy, nothing precludes creditors from filing competing actions to pierce the veil and impose alter ego liability. *See, e.g.*, *In re Emoral, Inc.*, 740 F.3d at 879-80.

Nevertheless, any claims for reverse veil piercing under Georgia law likely suffer from a fundamental flaw, regardless of whether they are brought by the Plaintiffs or the Trustee. Based on the court's limited review, Georgia law does not appear to recognize reverse veil piercing. *See Acree v. McMahan*, 585 S.E.2d 873, 875 (Ga. 2003); *Corrugated Replacements, Inc. v. Johnson*, 797 S.E.2d 238, 243 (Ga. Ct. App. 2017) (Georgia Supreme Court "firmly closed th[e] door" on reverse veil piercing).[19] The Plaintiffs therefore cannot be said to have asserted a cause of action belonging to the Debtor as of the commencement of its case. *See also Spartan Tube & Steel, Inc. v. Himmelspach (In re RCS Engineered Prod. Co., Inc.)*, 102 F.3d 223, 227 (6th Cir. 1996) (finding veil piercing claim was not property of the estate under Michigan law).[20] After all, the Trustee cannot assert claims that the estate does not have. *See* 11 U.S.C. § 541(a)(1).

---

[18]    The Plaintiffs asserted claims against Spiech Georgia in the Southern District of Georgia. Yet the Plaintiffs later somehow argued that they should not be considered creditors of Spiech Georgia during a hearing before the court on their motion to transfer venue of Spiech Georgia's bankruptcy case to the Southern District of Georgia. *Contra* 11 U.S.C. §§ 101(5), 101(10). It is hard to reconcile such inconsistent positions.

[19]    The Plaintiffs failed to cite to any authority discussing traditional or reverse veil piercing under Georgia law.

[20]    With that said, in the event that Georgia law does recognize some form of reverse veil piercing, the Plaintiffs would nonetheless be prohibited from pursuing such claims. The Plaintiff's recovery would interfere with the estate's recovery. *See infra* at p. 17.

In sum, the Plaintiffs' tort and PACA causes of action are nothing more than disguised claims for fraudulent transfers and breach of fiduciary duties.  As such, it is the Trustee, not the Plaintiffs, who may assert them on behalf of all creditors of the estate.

2.      *The Estate's Recovery Takes Precedence*

Even if the Plaintiffs could successfully argue that some of their causes of action are truly personal to them, the Trustee contends that the Plaintiffs would nevertheless be competing with the estate for the same recovery.  The Plaintiffs again make no substantive arguments to the contrary.

The Sixth Circuit has considered the issue of double recovery under similar circumstances. In *Van Dresser*, a creditor of the debtor attempted to bring a tort action in state court against a bank, its branch manager, and an officer of the debtor's subsidiary.  *Id.* at 946.  The creditor alleged that the officer drained both the debtor and the subsidiary of cash and that the bank was allegedly complicit in the officer's conduct.  *Id.*  The creditor maintained that because he had a direct relationship with the bank, his tort claim did not belong to the debtor's estate.  *Id.*  Rejecting this argument, the Sixth Circuit explained that where a creditor's personal claims rely on an injury common to the debtor, they inherently overlap with the estate's recovery.  *Id.* at 947-48.  The Sixth Circuit emphasized that because the creditor and the estate cannot both recover on their claims, "the estate['s] recovery takes precedence."  *Id.* at 949.

In this case, like in *Van Dresser*, the Plaintiffs' tort and PACA causes of action all flow from conduct that resulted in damages shared by the Debtor and the Plaintiffs.  Although the Complaint at times alleges that certain fraudulent misrepresentations were made by the Principals to the Plaintiffs, it repeatedly returns to the same underlying focus – the Debtor's failure to pay all

16

creditors as a result of the Principals' alleged breach of their fiduciary duties to the Debtor.[21]  *See In re Tronox Inc.*, 855 F.3d at 103-104.  The Trustee may eventually pursue claims for fraudulent transfers and breach of fiduciary duties against Spiech Georgia and the Principals, respectively. Any recovery by the Trustee on those claims will include the damages the Debtor, and thus each of its creditors, suffered as a result of the alleged wrongful acts central to each cause of action in the Complaint. Like all other creditors, the Plaintiffs' recourse is limited to whatever distribution they receive from the Debtor's estate.

The Plaintiffs claims for reverse veil piercing, to the extent an argument can even be made that they exist under Georgia law, would fare no better.  Any recovery by the Plaintiffs in connection with their reverse piercing/alter ego claims would directly interfere with the estate's competing recovery on its own reverse piercing claims.  *See In re Van Dresser Corp.*, 128 F.3d at 949.  Therefore, under *Van Dresser*, any viable reverse piercing claims belong to the Debtor's estate by default.  *See id.* at 948-49; *but see supra* at n.17.  The Plaintiffs, all of whom are creditors of the Debtor's estate, will instead receive their pro rata share of any assets the Trustee recovers.

In sum, to the extent any causes of action could be construed as personal to the Plaintiffs, the Trustee's recovery takes precedence.  Therefore, all of the Plaintiffs' causes of action belong to the Debtor's estate.

---

[21]     The Complaint contains several questionable statements regarding the Principals' alleged fraudulent misrepresentations.  For example, the Plaintiffs quote from a promissory note allegedly stating that if a payment must be repaid by the Growers to "the Defendants" due to the insolvency of "the Defendants," the note shall continue to be effective.  (Compl. at ¶ 103).  Upon review of the note, however, it makes no reference to Spiech Georgia or the Principals.  Instead, the Debtor, acting through its President, is the maker of the note.  (Compl. at Ex. CC).  In another paragraph, the Plaintiffs allege that "the Defendants" failed to pay the Growers "as agreed under the Contracts, or as promised in the Promissory Notes."  (Compl. at ¶ 105).  Upon review of those documents, the Debtor, not Spiech Georgia or any of the Principals, is the counterparty and issuer of the notes.  (Compl. at Ex. CC). And in yet another instance, the Plaintiffs allege that "the Principals" entered into the Distribution Agreement with Produce Pay. (Compl. at ¶ 274).  The Distribution Agreement, which is attached to the Complaint, identifies only one counterparty – the Debtor.  (Compl. at Ex. F).  The Complaint also appears to be misleading with respect to numerous other allegations. Nonetheless, these are issues for the Southern District of Georgia, not this court.

*B.        Contempt Under 11 U.S.C. § 105(a)*

The Trustee next requests the Plaintiffs be found in contempt for their violations of the automatic stay.  Section 105(a) provides that the court "may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions" of the Bankruptcy Code, including the power to hold parties in civil contempt.  11 U.S.C. § 105(a); *see In re Nicole Gas Prod., Ltd.*, 916 F.3d at 578.  To hold a party in contempt, the court must find that (i) the party violated a "definite" and "specific" court order requiring the party to perform or refrain from performing a particular act, or (ii) the party acted with knowledge of the court order.  *Liberte Capital Grp., LLC v. Capwill*, 462 F.3d 543, 550 (6th Cir. 2006) (citation omitted).[22]

The automatic stay is "exactly the kind of 'definite and specific order of the court' contemplated by the Sixth Circuit."  *Elder-Beerman Stores Corp. v. Thomasville Furniture Indus. Inc. (In re Elder-Beerman Stores Corp.)*, 197 B.R. 629, 633 (Bankr. S.D. Ohio 1996) (citation omitted); *see also In re Nicole Gas Prod., Ltd.*, 916 F.3d at 578 (citing *In re Crabtree*, 1985 WL 13441, at *3 (6th Cir. 1985) (table)) ("Violating the automatic stay constitutes civil contempt.").  Moreover, knowledge of the automatic stay may be inferred from a party's knowledge of a bankruptcy filing.  *See, e.g.*, *In re Stewart*, 499 B.R. 557, 571 (Bankr. E.D. Mich. 2013) (citation omitted); *Schewe v. Fairview Estates (In re Schewe)*, 94 B.R. 938, 947 (Bankr. W.D. Mich. 1989) (citation omitted).

Here, the Plaintiffs were well aware of the Debtor's bankruptcy.  All of the Plaintiffs filed proofs of claim in this case.  The Plaintiffs are represented in the Southern District of Georgia by

---

[22]        The United States Supreme Court recently held that a creditor may be found in contempt for a violation of the discharge injunction "where there is not a 'fair ground of doubt' as to whether the creditor's conduct might be lawful under the discharge order."  *Lorenzen v. Taggart*, ___ U.S. ___, 139 S. Ct. 1795, 1804 (2019).  To some extent, the court delayed releasing this Opinion until *Taggart* was decided given its potential scope.  This court does not read *Taggart* to change the Sixth Circuit's standard for determining whether a creditor can be held in contempt for violating the automatic stay.  *See, e.g.*, *In re Nicole Gas Prod., Ltd.*, 916 F.3d at 579; *TWM Mfg. Co., Inc. v. Dura Corp.*, 722 F.2d 1261, 1273 (6th Cir. 1983).

18

the same attorneys who have represented Produce Pay in the Debtor's case from its inception. The Plaintiffs included a footnote in the Complaint disclosing the existence of the Debtor's bankruptcy case to the Southern District of Georgia. In that footnote, they summarily (and incorrectly) represented that none of the causes of action violate the automatic stay because the Debtor is not named as defendant. (Compl. at ¶ 21 n.1).

The Complaint was drafted in a manner that clearly sought to usurp causes of action belonging to the Debtor's estate against Spiech Georgia and the Principals. Presumably, the Plaintiffs, with the assistance of counsel, investigated their causes of action before filing the Complaint. At least they should have. However, the Plaintiffs' failure to substantively explain why their causes of action do not belong to the estate leads the court to believe the Plaintiffs made the decision "to ask for forgiveness rather than permission." *In re Nicole Gas Prod., Ltd.*, 916 F.3d at 577 (quotation omitted).

Like the conduct in *Nicole Gas*, the Plaintiffs' conduct in this case is not a close call. When the Plaintiffs filed their Complaint, the automatic stay was in effect. They had the burden not to violate it and they had several means by which to ensure they did not do so. *See Wohleber v. Skurko (In re Wohleber)*, 596 B.R. 554, 572 (B.A.P. 6th Cir. 2019). The Plaintiffs could have filed a motion for abandonment of the causes of action, requested relief from the automatic stay, and/or sought derivative standing. *See In re Nicole Gas Prod., Ltd.*, 916 F.3d at 577, 579; *In re Van Dresser Corp.*, 128 F.3d at 948-49; *In re Blasingame*, 920 F.3d at 389. The Plaintiffs chose not to take any of those steps and now find themselves in contempt, with the issue of sanctions to be decided at a later date.

19

*C.      Collateral Attack on Previous Orders*

Finally, the Trustee argues that the Complaint is a collateral attack on this court's previous determination that Produce Pay is not a PACA trust beneficiary.  The Trustee points to numerous paragraphs in the Complaint alleging that Produce Pay bought, sold, and/or supplied produce, all of which seem to be inconsistent with this court's findings.  The Trustee thus requests that the Plaintiffs be held in contempt.

The Plaintiffs disagree with the Trustee's characterization of the Complaint.  According to the Plaintiffs, they are not collaterally attacking a ruling from this court because "[n]one of the issues in the Georgia Complaint have been decided by this Court" and "the claims . . . are distinct from those decided in this Court."  (Resp. at ¶¶ 12, 14; *see* Sur-Reply at ¶ 4).

A collateral attack is a "tactic whereby a party seeks to circumvent an earlier ruling of one court by filing a subsequent action in another court." *Pratt v. Ventas, Inc.*, 365 F.3d 514, 519 (6th Cir. 2004) (citation omitted).  The collateral attack doctrine generally provides that where a court of competent jurisdiction has decided a matter and unless that decision is reversed on appeal or reconsidered, the decision must be respected by other courts.  *See Celotex Corp. v. Edwards*, 514 U.S. 300, 313 (1995) (citations omitted).[23]

Produce Pay previously argued to this court that it was a PACA trust beneficiary.  As support, Produce Pay relied in large part on the terms of a "Distribution Agreement" it entered with the Debtor.  *In re Spiech Farms, LLC*, 592 B.R. at 158-59.  According to Produce Pay, the Debtor sold produce to Produce Pay, who immediately sold it back to the Debtor as Produce Pay's consignment agent.  *Id*.  This court ultimately concluded Produce Pay was not a PACA trust

---

[23]      Produce Pay previously consented to this court's jurisdiction to determine whether it was a PACA trust beneficiary. *In re Spiech Farms, LLC*, 592 B.R. at 157.

beneficiary. *Id*. at 167.  The court expressly found that Produce Pay did not buy, sell or supply produce. *Id*. at 167, 171.  The court relatedly rejected Produce Pay's argument that it purchased "all right, title and interest" in the Debtor's produce. *Id*. at 167-68.  In other words, there were no actual transactions involving produce between the Debtor and Produce Pay.  *See id*. at 171.  Instead, the court concluded that Produce Pay was nothing more than a lender that advanced funds to the Debtor. *Id.*

In their Complaint, the Plaintiffs assert four causes of action under PACA.  The Plaintiffs correctly note that none of those claims seek a determination that Produce Pay is a PACA trust beneficiary under 7 U.S.C. § 499c.  Nonetheless, the Plaintiffs allege no fewer than sixty-eight times in the Complaint that Produce Pay bought, sold and/or supplied produce or purchased "all right, title and interest" in the Debtor's produce.[24]  Stated another way, more than 10% of the Complaint's paragraphs directly contradict findings necessarily made by this court.[25]  These same findings are currently subject to an appeal in the Western District of Michigan filed by Produce Pay. *See supra* at n.4.  Not surprisingly, the Complaint makes no mention of this court's decision or the pending appeal.  (*See* H'rg Tr. at 33: 6-10).

By repeatedly including allegations in the Complaint upon which this court has already ruled and by failing to make any mention of that ruling to the Southern District of Georgia, the Plaintiffs seem to be inviting more favorable findings from that court.  The Plaintiffs' tactics are

---

[24]     (*See, e.g.*, Compl. at ¶¶ 64, 108, 111, 113, 117, 118, 119, 123, 134, 163, 164, 169, 170, 171, 187, 190, 198, 199, 201, 230, 233, 238, 242, 244, 245, 267, 268, 269, 271, 272, 274, 277, 280, 285, 286, 287, 290, 291, 292, 293, 325, 326, 327, 328, 332, 333, 334, 355, 356, 372, 374, 386, 387, 388, 389, 390, 391, 392, 407, 408, 409, 410, 411, 412, 413, 414, 424, 425).

[25]     In addition to express allegations in the Complaint's text, the exhibits to the Complaint state that all Plaintiffs, not just Produce Pay, are PACA trust beneficiaries. (*See, e.g.*, Compl. at Ex. X). When questioned by this court about those exhibits, the Plaintiffs acknowledged that they could be misleading to the Southern District of Georgia. (Hr'g Tr. at 37: 12-21). The Plaintiffs suggested they should perhaps take remedial action so as to ensure that the Southern District of Georgia is in no way misled.  Whether that has occurred is not an issue for this court, however.

certainly troubling.  They may even be perceived as underhanded.[26]  Nonetheless, the court need

not decide at this time whether the Plaintiffs should be held in contempt for a collateral attack.[27]

The court has already concluded that the Plaintiffs are in contempt for violating the automatic stay.

Any additional contempt finding would be unnecessarily duplicative.

### **CONCLUSION**

After participating in the Debtor's bankruptcy case for approximately two years, the

Plaintiffs made the calculated decision to file a seventeen count Complaint in the Southern District

of Georgia.  Labels notwithstanding, each count of the Complaint is comprised of nothing more

than claims for fraudulent transfers and breach of fiduciary duties.  When confronted by the Trustee

regarding the nature of their causes of action, the Plaintiffs failed to explain why those causes of

action do not belong to the Debtor's estate.  In light of the foregoing, the court concludes that the

Plaintiffs willfully and deliberately violated the automatic stay.  The court will enter a separate

order consistent with this Opinion.

---

[26]     Produce Pay may ultimately prevail on its pending appeal.  It is therefore hard to understand why Produce Pay would adopt a strategy that could be perceived as an attack on the appellate court's jurisdiction.

[27]     The court is mindful that the Principals are active participants in the Southern District of Georgia.  To the extent necessary in the future, they are more than capable of requesting appropriate relief under the circumstances. *See, e.g.*, *Parklane Hosiery Co., Inc. v. Shore*, 439 U.S. 322, 329-32 (1979); *Footman v. Cheung*, 139 Fed. Appx. 144, 145-46 (11th Cir. 2005).

**Signed: July 3, 2019**





John T. Gregg
United States Bankruptcy Judge